STATE of Tennessee

v.

Frank JACKSON and Thomas Avery.

Supreme Court of Tennessee.

Nov. 5, 1973.

David M. Pack, Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Nashville, for appellant.

Maynard E. Pirsig, Minneapolis, Minn., for amicus curiae.

Barney J. Reeves, Kingsport, Russell J. Overby and Walter C. Kurtz, Nashville, for appellees.

Wendy W. Schiller, St. Louis, Mo., for amicus curiae.

OPINION

McCANLESS, Justice.

Since this is a civil case in which the sole determinative question is the constitutionality of a statute, the appeal from the Circuit Court is to the Supreme Court. Section 16–408, T.C.A. The challenge is to that part of Section 37–258, T.C.A., which allows an appeal by the State or subdivision of the State from a juvenile court's disposition of a child.

The Section challenged is part of the juvenile courts statute enacted as Chapter 600 of the Public Acts of 1970, and now codified as Sections 37–201 to 37–259, T.C.A., inclusive. The pertinent part of the Section is:

". . . When a juvenile court shall make any disposition of a child, either aggrieved party including the state or subdivision of the state dissatisfied with the judgment or order may appeal to the circuit court which shall hear the testimony of the witnesses and try the case de novo."

The facts are that two juveniles, Frank Jackson and Thomas Avery, were charged with an assault with the intent to commit robbery and with being delinquent. An affidavit shows the age of one of the boys to be fifteen; that of the other does not appear in the record.

The juvenile court, after hearing the evidence and testimony, found the defendants to be not guilty. The State appealed to the Fourth Circuit Court which adjudged that:

"1. That provision of the Tennessee Code Annotated 37–258 which allows the State to appeal from an adverse decision in the Juvenile Court is Unconstitutional in that it violates the prohibition against double jeopardy contained in Article I, § 10 of the Tennessee Constitution and the Fifth Amendment of the United States Constitution.

"2. The Defendants' Motion to Dismiss the State's Appeal is granted on the ground that the Defendants were tried and acquitted of the same offense in the Juvenile Court of Davidson County, and to allow the State's Appeal would violate the Defendants' State and Federal Constitutional right to be protected against double jeopardy."

The State perfected its appeal to the Supreme Court, and assigned the single error that:

"The Fourth Circuit Court erred by granting the juveniles' motion to dismiss the State's appeal on the ground that T. C.A. § 37–258 was a violation of the constitutional prohibition against double jeopardy."

The applicable section of the Constitution of Tennessee, Article I, Section 10, provides:

"That no person shall, for the same offense, be twice put in jeopardy of life or limb."

The comparable section of the Constitution of the United States is this part of the Fifth Amendment:

". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . ."

The double jeopardy provision of the Fifth Amendment is binding on the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 [1969].

The due process clause of the Fourteenth Amendment to the Constitution of the United States reads:

". . . nor shall any state deprive any person of life, liberty, or property, without due process of law; . . ."

Among the liberties guaranteed by the Constitution of Tennessee is the following part of Article I, Section 17, which appears in almost identical words in the State's first Constitution—that of 1796:

". . . and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Shannon's Annotated Constitution of Tennessee, pages 147 and 149 [1916].

In an opinion of the United States District Court of the District of Columbia in the case of United States of America v. Dickerson, 168 F.Supp. 899 [1958], the court said:

"Ineluctable logic leads to the conclusion that the constitutional protection against double jeopardy, as is the case with the right of counsel and the privilege against self-incrimination, is applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person. Necessarily, therefore, this is true of proceedings in the Juvenile Court. Precious constitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings. The test must be the nature and the essence

of the proceeding rather than its title. If the result may be a loss of personal liberty, the constitutional safeguards apply."

Before the opinion of the Supreme Court of the United States in 1967 in the case styled Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, in proceedings in juvenile courts, juveniles were not afforded all the constitutional rights and safeguards to which adult defendants were entitled in criminal proceedings. This was on the principle that juvenile proceedings were civil in nature, having as their purpose reformation and rehabilitation rather than punishment. This view was expressed by our Court in Childress v. State, 133 Tenn. 121, 179 S.W. 643 [1915], and in Juvenile Court of Shelby County v. State ex rel., 139 Tenn. 549, 201 S.W. 771 [1918]. The Court many times has cited these opinions with approval and without question it has been the purpose of the juvenile statutes, both before and since the enactment of the 1970 Act, to reform and to rehabilitate rather than to punish.

Within recent years, however, there has been a change in the holdings of the courts in cases involving juveniles charged with and tried for the commission of delinquent acts.

The *Dickerson* case has been relied on in a number of opinions of appellate courts as authority for holding that jeopardy attaches in juvenile proceedings that can result in the deprivation of the child's liberty. Sawyer v. Hauck, 245 F.Supp. 55 [D. C.Tex., 1965]; Garza v. State, 369 S.W.2d 36 [Tex.Cr.App., 1963]; and Anonymous v. Superior Court of Pima, 10 Ariz.App. 243, 457 P.2d 956 [1969]. But the influence of *Re Gault* has been such that the courts have come to apply its reasoning in juvenile cases with respect to the several constitutional safeguards enjoyed by adult defendants to criminal prosecutions. It is determinative of this appeal.

In the *Gault* case the court held that a boy, age fifteen years, who as a delinquent had been committed to confinement in a state institution during the rest of his minority had been entitled (1) to timely written notice to him and to his parents of the charges against him, (2) to notification of his right to counsel, (3) of the application to him of the constitutional privilege against self-incrimination, and (4) to the determination of delinquency, in the absence of a confession, by sworn testimony subject to cross examination.

The court in the opinion by Mr. Justice Fortas said:

"Ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours . . .' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide.

"In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process.'"

The question for our consideration in this case is whether the juveniles were in jeopardy within the meaning of the State and Federal Constitutions during the hearing in the juvenile court that resulted in the dismissal of the proceedings and whether the hearing on appeal to the Cir-

**188**

cuit Court which the State now seeks would result in their being twice placed in jeopardy. In order to decide this question we must first consider what might have been the result of a decision of the juvenile court adverse to the juveniles and what might be the result of a hearing *de novo* in the Circuit Court.

Under Section 37–231, T.C.A., a child found to be delinquent may be placed in an institution, camp, or other facility for delinquent children, or committed to the State Department of Correction and assessed a fine not to exceed $50.00 for each offense which constitutes a violation of a state law or municipal ordinance. The law clearly provides, therefore, that the juvenile court might have pronounced a judgment that would have deprived these juveniles of their liberty.

The State relies on the opinion of the Supreme Court of the United States in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 [1971], holding that in the two cases which the court then decided, it was not required that juveniles be allowed trials by jury. Our Court of Appeals in 1970, however, decided in the case of Arwood v. State, 62 Tenn.App. 453, 463 S.W.2d 943, that juveniles charged with acts which, if committed by adults, would be felonies, are entitled to demand and be awarded trials by jury. The court relied on *Re Gault,* supra, and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 [1970], and other authorities.

 We hold that a juvenile who is tried for an act which, if committed by an adult, would constitute a crime, and by a court which has jurisdiction in that trial to deprive him of his liberty, in such trial undergoes jeopardy. Any subsequent trial of the juvenile on the same charge would cause him to be twice put in jeopardy in violation of the rights guaranteed him by the State and by the Federal Constitutions.

We therefore hold Section 37–258, T.C.A., to be unconstitutional to the extent

that it allows an appeal and a trial *de novo* in the Circuit Court in a case in which the juvenile has been acquitted of delinquency by the juvenile court. Such a trial would subject the juvenile to double jeopardy in violation of his rights under Article I, Section 10, of the Constitution of Tennessee and under the Fifth Amendment to the Constitution of the United States. Further it would deprive him of his rights guaranteed by Article I, Section 17, of the Constitution of Tennessee and by the Fourteenth Amendment to the Constitution of the United States.

We affirm the judgment of the Circuit Court dismissing the case.

DYER, C. J., and CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.