**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee, Appellant,**

v.

**Maggie B. MILES, Appellee.**

Supreme Court of Tennessee.

Jan. 20, 1975.

Rehearing Denied June 9, 1975.

Harbison, J., concurred in part and dissented in part and filed opinion in which Fones, C. J., concurred.

Fones, C. J., and Harbison, J., concurred in part and dissented in part on denial of petition to rehear.

Robert B. Eadie, Nashville, for appellant.

Avon N. Williams, Jr., Nashville, for appellee.

## OPINION

BROCK, Justice.

The appellee, Maggie B. Miles, was arrested by police officers of the Metropolitan Government of Nashville and Davidson County, Tennessee, and charged with interfering with a police officer, which in the warrant of arrest was denominated "the offense of violation Metropolitan Code Chapter 34 Section 1–1."[1] The penalty for this violation is a fine of fifty dollars while failure to pay it results in imprisonment for not more than three months. See: Attached *Appendix.* Thereafter her case came on for trial before the General Sessions Court for the Metropolitan Government of Nashville and Davidson County and after a trial on the merits was dismissed on July 3, 1973. In due course the Metropolitan Government appealed this decision to the Sixth Circuit Court of Tennessee in and for the County of Davidson for a trial *de novo.* The appellee then filed a motion in the Circuit Court to dismiss the appeal upon the grounds that (1) Section 14.26 of the Metropolitan Charter, relied upon by the appellant, does not by its terms provide for an appeal *de novo* by the Metropolitan Government from a decision of the General Sessions Court dismissing on the merits a charge of violation of a Metropolitan ordinance, and, (2) that if the Metropolitan Charter provision above-mentioned were construed to provide for an appeal *de novo,* it would, in that event, be in violation of Article 1, Section 10 of the Constitution of the State of Tennessee and of the Fifth and Fourteenth Amendments to the Constitution of the United States which provide that "no person shall, for the same offense, be twice put in jeopardy of life or limb."

After due consideration of said motion to dismiss the Circuit Court rendered a written opinion agreeing with the appellee on both points, holding that Section 14.26 of the Metropolitan Charter did not grant to the Metropolitan Government a right of appeal *de novo* from a judgment of dismissal of a charge of violating a city ordinance and, secondly, that if said charter provision were construed to grant such appeal it would violate the double jeopardy clauses of the State and Federal Constitutions as above-mentioned. Accordingly, the appeal was dismissed and from this judgment of the Circuit Court the Metropolitan Government has appealed to this Court, there being no disputed issues of fact.

The Metropolitan Government insists that the Circuit Court erred in dismissing the appeal and asserts that Section 14.26 of the Metropolitan Charter and T.C.A., Section 27–509, grant to the Metropolitan Government the right to appeal *de novo* to the Circuit Court a judgment of the General Sessions Court dismissing on the merits a

---

1. "Sec. 34–1–1. Resisting or interfering with officers.

"It shall be unlawful for any person to resist any police officer, any member of the police department or any person duly empowered with police authority, while in the discharge or apparent discharge of his duty, or in any way to interfere with or hinder him in the discharge or apparent discharge of his duty. (66–928, § 66.)" *Metropolitan Code.*

charge of violation of a city ordinance, the punishment for which is the imposition of a fine; and, that such right of appeal does not violate the constitutional provisions, above-mentioned, prohibiting double jeopardy. The appeal here sought is not one merely for the correction of errors of the lower court; it is *de novo*, that is, a completely new trial at which either side may call such witnesses as it desires and the higher court makes an independent determination of guilt or innocence.

The Metropolitan Charter provision and the state statute relied upon for granting to the Metropolitan Government a right of appeal in the circumstances of this case are as follows, to wit:

"Section 14.26. Appeals.

". . . Appeals on behalf of the defendant from a judgment in any criminal case tried by the court may be taken to the criminal court of Davidson County, Tennessee. Such appeal shall be prayed and granted within ten days from the rendition of the judgment or as otherwise provided by law, and shall not act as a stay or supersedeas of the judgment unless the defendant shall execute an appeal bond with good and solvent surety, to pay the fines at costs and other costs adjudged upon appeal. Provided, that this section shall not be construed to require the Metropolitan Government to make bond to perfect any appeal taken hereunder. Any such appeal shall be perfected by written notice from the director of the Metropolitan Department of Law or any assistant thereof, addressed to the court clerk of the Metropolitan General Sessions Court." *Metropolitan Charter*, Section 14.26.

"27–509. Appeal from general sessions court.—Any party may appeal from an adverse decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with the law as now provided for appeals from justices of the peace courts.

This provision allowing ten (10) days in which to perfect an appeal shall apply in every county in Tennessee, any provision of any private act to the contrary notwithstanding, it being the legislative intent to establish a uniform period of ten (10) days in which any such appeal may be perfected in any county in Tennessee. Any appeal shall be heard *de novo* in the circuit court. If no appeal is taken within the time provided, then execution may issue." T.C.A., Section 27–509.

We find that Section 14.26 of the Metropolitan Charter leaves much to be desired in the way of clarity and that it fails to expressly grant the asserted right of appeal, although, it may do so by implication.

There is no doubt, however, that T.C.A., Section 27–509, does grant an appeal from the judgment of a General Sessions Court in a *civil* action. Of course, the insistence of the Metropolitan Government that this provision applies in this case upon the theory that this is a "civil" case begs the question. We must decide the constitutional questions asserted.

█ In addition to the fact that Article 1, Section 10 of the Constitution of Tennessee affords protection from double jeopardy the citizen is given a like protection by the Fifth Amendment to the Constitution of the United States. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It has been said that the doctrine is so ancient that it is impossible to trace its origin. *Commonwealth v. Payne*, 245 S.W.2d 581 (Ky.). Such an ancient right is not to be given a narrow construction.

In *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, it was held that the trial of a person in a municipal court of a state for alleged violation of a "municipal ordinance" constituted jeopardy and prohibited a later trial in a trial court of general jurisdiction of that state for violation of a "state law" based upon the same facts. That case disposed of the argument that a

municipality should be treated as a separate sovereign from that of the state of which it is a political subdivision and, thus, that one could be tried for the same offense in both a municipal court and a state court of general jurisdiction without violation of the double jeopardy clause.

However, the Metropolitan Government in this case asserts that the proceeding against the appellee is a "civil" one as distinguished from a "criminal" action. This assertion is somewhat anomalous since the appellant relies upon Section 14.26 of the Metropolitan Charter, above quoted, which refers to "appeals . . . in any _criminal_ case . . . may be taken to the _criminal_ court . . . .." (Underscoring added.) The Metropolitan Government relies upon the decisions of this Court in _O'Haver v. Montgomery_, 120 Tenn. 448, 111 S.W. 449 (1908); _O'Dell v. City of Knoxville_, 214 Tenn. 237, 379 S.W.2d 756 (1963). These cases do, indeed, support the contention of the Metropolitan Government that a proceeding for violation of a municipal ordinance is a civil, as distinguished from a criminal, action and that judgment of a municipal court does not prevent a second trial in the Circuit Court. Nevertheless, those cases have been, at least impliedly, overruled by the decision of this Court in _State v. Jackson_, 503 S.W.2d 185 (Tenn. 1973). There it was held that a juvenile who had been found not guilty in the juvenile court in a proceeding considered "civil" could not be tried again for the same offense upon an appeal _de novo_ to the Circuit Court. The Court adopted the following statement from _United States of America v. Dickerson_, 168 F.Supp. 899 (D.C.1958), to wit:

"Ineluctable logic leads to the conclusion that the constitutional protection against double jeopardy, as is the case with the right of counsel and the privilege against self-incrimination, is applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person. Necessarily, therefore, this is true of proceedings in the Juvenile Court. Precious constitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings. The test must be the nature and the essence of the proceeding rather than its title. If the result may be a loss of personal liberty, the constitutional safeguards apply." (Underscoring added.)

It is to be noted that in the _Jackson_ case it was the _liberty_ of the citizen which was protected by the double jeopardy clause. This leaves remaining unanswered the question whether or not the double jeopardy clause protects one from a second trial in which, if found guilty, a "fine," rather than imprisonment, may be imposed. In effect, the holding of the United States Supreme Court in _Ex parte Lange_, 85 U.S. 163, 168–169, 21 L.Ed. 872, 877, 878 (1873), was that such protection is provided. It was there held that a judgment of conviction and imposition of a fine could not be re-opened by the government to allow the additional infliction of imprisonment. The Court said:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully _punished_ for the same offense." (Underscoring added.)

The Court also said that double jeopardy protection applies to "felonies, minor crimes and misdemeanors alike . . ." Again, in _Helvering v. Mitchell_, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, Mr. Justice Brandeis, speaking for the Court, said:

"Where the objective of the subsequent action likewise is _punishment,_ the acquittal is a bar, because to entertain the second proceeding _for punishment_ would subject the defendant to double jeopardy . . ." (58 S.Ct. 630, 632) (Underscoring added.)

■ And, in _Pennywell v. McCarrey_, 9 Cir., 255 F.2d 735, 17 Alaska 580, it was held

that "A defendant who has paid a fine imposed for violation of law is placed in double jeopardy by a subsequent proceeding to collect the same fine a second time." We hold that the imposition of a *fine* is punishment.

■ It was also held in *Helvering v. Mitchell, supra,* that in order for an alleged "civil" action to be considered beyond the protection of the double jeopardy clause it was necessary that such action be "remedial in nature" and not intended to have the effect of inflicting "punishment" upon the citizen in order to vindicate public justice. The Georgia Court of Appeals in *Cushway v. State Bar,* 120 Ga.App. 371, 170 S.E.2d 732, 735–736 (1969) has reached a like conclusion and employed language which we adopt, to wit:

> "A matter is criminal only if imprisonment or the assessment of a fine may follow conviction . . . only actions intended to authorize criminal punishment as distinguished from remedial actions subject the defendant to 'jeopardy.' '[T]he double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense.' "

■ The appellant also asserts that the *de novo* nature of the second trial which is sought in the Circuit Court prevents the application of the double jeopardy clause upon the theory that the judgment of the General Sessions Court is "wiped clean" and cannot, therefore, be considered a former jeopardy. We are not impressed with this argument. It, too, begs the question at issue. It has, in effect, already been answered contrary to the insistence of the Metropolitan Government by the decision of this Court in the *Jackson* case, *supra,* because the second trial of the juvenile in *Jackson* was, likewise, a *"de novo"* hearing in the Circuit Court which this Court held to be a violation of the double jeopardy clause. The double jeopardy clause protects not only from a second punishment for the same offense, it also forbids a second trial for the same offense. *Ex parte Lange, supra; Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114; *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Pettyjohn v. Evatt,* 369 F.Supp. 865 (D.C.1974).

■ We, therefore, hold that a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that, it seeks punishment to vindicate public justice and, therefore, constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions, and, consequently, the alleged offender, whether acquitted or convicted, cannot again be tried for the same offense in a state trial court of general jurisdiction over the timely objection of the defendant. Thus, T.C.A., Section 27–509, and Metropolitan Charter, Section 14.-26, cannot be construed to authorize the appeal sought herein because, if so construed, they would be unconstitutional.

In conclusion, we affirm the action of the trial court in holding that neither the Metropolitan Government Charter, Section 14.-26, nor T.C.A., Section 27–509, authorizes the Metropolitan Government to appeal and have another trial *de novo* in the Circuit Court for the same offense and, concur in the action of the trial court in dismissing said appeal.

All costs of this appeal will be adjudged against the appellant, Metropolitan Government of Nashville and Davidson County, Tennessee.

COOPER and HENRY, JJ., concur.

HARBISON, J., concurs in part, dissents in part.

FONES, C. J., concurs in part in the opinion of HARBISON, J.

## APPENDIX

"§ 1–1–7    Metropolitan Code

"Sec. 1–1–7.  General penalty.[7]

"Whenever in this Code or in any other ordinance or resolution of the metropolitan government or in any rule, regulation or order promulgated by any officer or agency of the metropolitan government under authority duly vested in him or it [sic] any act is prohibited or is made or declared to be unlawful or an offense or a misdemeanor, or the doing of any act is required or the failure to do any act is declared to be unlawful or an offense or a misdemeanor, where no specific penalty is provided therefor, the violation of any such provision of such Code or any other ordinance or resolution of the metropolitan government or such rule, regulation or order shall be punished by a fine not exceeding fifty dollars. For failure to pay any such fine, the offender may be imprisoned in the metropolitan jail or metropolitan workhouse for not more than three months.

"Except where otherwise provided, every day any violation of this Code or any other ordinance or resolution of the metropolitan government or such rule, regulation or order shall continue shall constitute a separate offense.

"Sec. 1–1–8.    Commitment to workhouse upon failure to pay or secure fine.

"Upon the failure of any person to pay or secure any fine imposed by a judge of division I, division II or division III of the metropolitan courts, he shall be committed to the metropolitan workhouse and there required to perform such manual labor as may be required of him until such fine is paid off at the rate provided for county workhouses in Tennessee Code Annotated, section 41–1223, or any amendments thereto.  No prisoner shall be discharged upon the act of insolvency nor before such fine

"7.  As to courts and imprisonment, see ch. 12 of this Code.  As to penalty for violation

§ 1–1–8

has been worked out, fully paid or secured, or unless he is pardoned or paroled in accordance with the provisions of the Metropolitan Charter.  (66–18, § 1.)"

## OPINION CONCURRING IN PART AND DISSENTING IN PART

HARBISON, Justice (concurring in part and dissenting in part).

I am in agreement with the result stated in the principal opinion prepared for the Court by Justice Brock, to the effect that where there has been a trial on the merits for violation of a penal ordinance and an acquittal of the accused, the municipal government does not have a right of appeal from such acquittal.

In my opinion, however, this result is not brought about in the present case by the wording of the Metropolitan Charter, because I believe that the charter language is sufficiently broad to permit an appeal.

A section of the State Criminal Code, however, T.C.A. § 40–3403, provides:

"The state has no right of appeal or other remedy for the correction of errors, upon a judgment of acquittal in a criminal case of any grade."

The two immediately preceding sections of the Code authorize an appeal in the nature of a writ of error to either party in a criminal action, with the exception stated in T.C.A. § 40–3403.

It seems to me that if a municipal government is to be deemed an arm of the state government, and not a separate sovereign, then it is bound by this general statute and cannot appeal any sort of criminal action after there has been an acquittal after trial on the merits.  I think that it can and does have a right of appeal where there has been a dismissal on a preliminary motion or any other termination of the proceedings, short of an acquittal after a full trial.

of regulations adopted by traffic and parking commission, see § 27–1–21."

It seems to me that not all proceedings for violations of city ordinances are criminal in nature. Where city ordinances undertake to proscribe conduct which is made criminal by state statute or by the common law, then I would agree that proceedings for violation of such ordinance are sufficiently criminal in nature that an acquittal on the charges concludes the matter and that there is no right of appeal by the municipal government. There are many city ordinances, however, which are purely civil in nature, and proceedings for the violation thereof, in my opinion, could not in any sense be deemed criminal. I would include in this category violations of most parking and other traffic ordinances, where proceedings are instituted merely by a citation or summons, together with numerous other types of ordinances, such as health and licensing regulations, taxing ordinances, zoning ordinances and many others. Violations of these, in my opinion, should not be placed in the category of "criminal". I would limit the holding of the present case to ordinances which are clearly penal in nature.

As noted in the principal opinion, there is a long line of Tennessee cases holding that actions for violation of city ordinances are civil proceedings rather than criminal. In one of the leading Tennessee cases on the subject, however, *O'Haver v. Montgomery,* 120 Tenn. 448, 111 S.W. 449 (1908), a case widely cited in treatises on municipal corporations, the Court stated:

> ". . . In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and criminal character. He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine,

and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard *de novo,* the rules of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment. So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it. When we characterize the action as being of a criminal nature, we do not mean to be understood as using the term wholly in the sense in which it is applicable to actions brought by the state in the form of indictments and presentments for violation of the criminal laws of the state, but rather by analogy, and for want of a better term." 120 Tenn. at 459–460, 111 S.W. at 451.

I do not understand that the present holding would affect the principles announced in the *O'Haver* case, particularly insofar as the procedure to be followed on appeal by persons accused of violating a city ordinance. City charters usually provide for the handling of these cases, and traditionally, as pointed out in the *O'Haver* case, *supra,* they have been considered civil cases for purposes of appeal and procedure. I think it important to state that these rules are not affected by the present holding, according to my understanding.

The nature of the violation of a city ordinance, as being civil or criminal, has been considered by this Court in a number of contexts, and uniformly the Court has held that the principles of civil rather than criminal law are applicable. Thus in the case of *Deitch v. City of Chattanooga,* 195 Tenn. 245, 258 S.W.2d 776 (1953), an ordinance of the City of Chattanooga forbade the possession of federal wagering stamps

and provided penalties for violation. The defendant, charged with such violation, insisted that introduction of his application for wagering stamps and the tax returns filed with the federal government by him violated his constitutional protection against self-incrimination. This Court held to the contrary on the ground that the proceedings were civil rather than criminal in nature. In *Guidi v. City of Memphis,* 196 Tenn. 13, 263 S.W.2d 532 (1953), the Court held that a warrant charging violation of a city ordinance was civil, rather than criminal, and that principles of the criminal law with regard to the sufficiency of criminal warrants were not applicable. In *O'Dell v. City of Knoxville,* 214 Tenn. 237, 379 S.W.2d 756 (1963), this Court held that the procedure on appeal from violation of a city ordinance should be that followed in civil rather than in criminal cases, and in the subsequent appeal of the case reported at 54 Tenn.App. 59, 388 S.W.2d 150 (1964), the Court of Appeals cited numerous Tennessee cases to the effect that such cases are generally considered to be civil matters.

The subject is treated in depth at 9 McQuillin, *Municipal Corporations,* §§ 27.05 et seq. In § 27.06 the following statement is made:

"The decisions present some apparent conflict respecting the precise nature of proceedings to enforce ordinances. Whether in character they are to be considered civil or quasi civil, criminal or quasi criminal has been discussed in relation to:

"(1) The method of instituting the proceedings.

"(2) The name in which the action should be brought.

"(3) The sufficiency of the pleadings.

"(4) The mode of trial, whether summary or by jury.

"(5) The arraignment and plea of the defendant.

"(6) The admission of evidence, burden and degree of proof.

"(7) The verdict, judgment and sentence and mode of execution, and

"(8) The method of review.

"Leaving the details of the judicial rules to be presented in the sections which follow, only a few general observations will be mentioned here. The weight of judicial authority declares that the prosecution is in the nature of a civil action for the recovery of a debt. Thus, prosecutions for violations of ordinances are not 'criminal,' as that term is used in constitutions and statutes. And the fact that the process shall be a warrant and that the one named therein may be arrested and retained in custody or under reasonable recognizance until the next sitting of the local court, and moreover, that in event of judgment against defendant and refusal or neglect to pay the same, he may be committed, does not render the case criminal."

With respect to the precise question presented in this case, the following statement is found at § 27.65 (pp. 788–789):

"The right of a municipal corporation to appeal is authorized ordinarily by statute or charter, although this right has in many cases been denied. It frequently is made to depend upon whether the proceeding is civil in character, or criminal or quasi criminal. In those jurisdictions where the action is held to be civil, ordinarily the corporation is given the right of appeal from a judgment of acquittal. But where the action is regarded as criminal or quasi criminal, especially if the offense is in its essence a misdemeanor at common law or by statute, unless expressly authorized by law, it is generally held that no appeal lies in behalf of the corporation from a judgment in favor of the defendant."

As previously stated, I concur in the result reached in the principal opinion to the effect that the Metropolitan Government should not be allowed a right of appeal from acquittal after a trial on the merits

for violation of a penal ordinance. To avoid possible confusion or misunderstanding, however, I think that the holding should be limited precisely to that situation.

I do not consider that *State v. Jackson,* 503 S.W.2d 185 (Tenn.1973) (a case involving acquittal of juvenile offenders) purports to overrule previous decisions with regard to municipal ordinances, or that it should be so construed. It does establish the principle that once there is an acquittal after trial on the merits of any proceeding which might involve the liberty of an individual there is no right of appeal by the public body involved, even though the proceedings be described as merely "quasi criminal" or even "civil" in nature.

I am authorized to state that Chief Justice FONES concurs in this separatè opinion.

*OPINION ON PETITION TO REHEAR*

BROCK, Justice.

The appellant has filed a petition to rehear and a supplemental petition to rehear in this cause and the Attorney General of the State of Tennessee, as amicus curiae, and both the parties have filed briefs all of which have been thoroughly considered by the Court. The Court is of the opinion that the petition and supplemental petition to rehear fail to advance any argument, cite any new authority or point out any material fact which is shown to have been overlooked in the original opinion.

The appellant and the Attorney General, amicus curiae, express certain apprehensions with respect to the impact which they fear the original opinion may have upon issues not presented to the Court in this cause. We know that the apprehensions expressed are sincerely held but we are of the opinion that the original opinion of the Court does not justify such fears and that the holding of the Court clearly is restricted

to the question presented. In the event that the feared results should occur, the questions thus raised must await a case by case determination in the ordinary way.

The petition and supplemental petition to rehear are denied.

COOPER and HENRY, JJ., concur.

FONES, C. J., and HARBISON, J., concur in part, dissent in part.