IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2000 Session

## CITY OF CHATTANOOGA v. KEVIN DAVIS

**Direct Appeal from the Criminal Court for Hamilton County**
**No.225103     Hon. Douglas A. Meyer, Judge**

**FILED OCTOBER 31, 2000**

**No. 2000-00664-COA-R3-CV**

---

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part; Case Remanded.**

HERSCHEL PICKENS FRANKS, J., dissenting.

The ultimate issue in this case is whether the Courts of this State will accord to Kevin Davis, who was convicted and fined $300.00 in City Court for reckless driving, all of his constitutional rights under the Constitution of the State of Tennessee.

In the original Tennessee State Constitution of 1796 and carried forth in subsequent constitutions, is the provision now designated as Article VI, Section 14, which states:

> No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

A trial judge may set a fine of more than $50 in only two circumstances, when the defendant waives the right for jury determination of the fine, and when the fine is statutorily specified and allows no judicial discretion in its imposition. *State v. Martin*, 940 S.W.2d 567, 570 (Tenn. 1997) (citing *State v. Sanders*, 735 S.W.2d 856, 858 (Tenn. Crim. App. 1987) and *France v. State*, 65 Tenn. 478, 486 (1873)).

The City Judge for the City Court of Chattanooga fined Davis $300.00 after Davis plead guilty to the charge of reckless driving. The relevant city ordinance under which Davis was fined is Section 24-13 of the Chattanooga City Code. This section states:

**Sec. 24-13. Reckless driving.**

(a) Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving.

(b) Every person convicted of reckless driving shall be punished upon the first conviction by a fine of not less than five dollars ($5.00), on a second conviction by a fine of not less than ten dollars ($10.00), on a third conviction by a fine of not less than twenty-five dollars ($25.00) and on all subsequent convictions by a fine of not less than fifty dollars ($50.00).

Chattanooga City Code, Section 24-13.

The City of Chattanooga argues that the imposition of the $300 fine was authorized by T.C.A. § 6-54-306 and Chattanooga City Code § 1-8(a). T.C.A. § 6-54-306 provides:

Penalty for violation of home rule municipal ordinances. – All home rule municipalities are empowered to set maximum penalties of thirty (30) days imprisonment and/or monetary penalties and forfeitures up to five hundred dollars ($500), or both, to cover administrative expenses incident to correction of municipal violations.

Similarly, Section 1-8(a) of the Chattanooga City Code states:

Wherever in this Code or in any ordinance or rule or regulation promulgated by any officer of the city under authority vested in him by law or ordinance, any act is prohibited or is declared to be unlawful or a misdemeanor, or the doing of any act is required, or the failure to do any act is declared to be unlawful, the violation of any such provision of this Code or any such ordinance, rule or regulation shall be punished by a monetary penalty and forfeiture not exceeding five hundred dollars ($500.00).

The City argues that the violation of a municipal ordinance is civil rather than criminal in nature, and as such, the constitutional provision does not apply. The City suggests that the record shows that the legislative purpose of T.C.A. § 6-54-306 was to "reduce the economic detriment to municipal government. . . by assisting the City to help cover the administrative expense for prosecuting cases under municipal ordinances." The City relies on the legislative history to show that the statute was meant to be remedial, and therefore civil, in nature.

In this regard, the legislative history of T.C.A. § 6-54-306 reveals those

sponsoring the passage of statute had a more punitive purpose in mind for it. The following is from the Tennessee General Assembly on April 23, 1991:

> REPRESENTATIVE KENT: . . . you're not raising the fee. This is a penalty clause when people won't clean up their properties, such as, for example, the adult entertainment things, people have cars on there. Sometimes when you bring them back into court, you know, on a $50 fine on contempt, that's just no enough to get their attention. The 30 days imprisonment is in the present law, which stays in this law, that raises it $50 to $100.
>
> *****
>
> REPRESENTATIVE TURNER: Now, this raises the fines on what?
>
> KENT: It's not the fines; it's a penalty where if a person doesn't clean up a certain area, after they bring it back to the Court in (inaudible) violations, the penalty is $500, goes up.
>
> And some of the categories, some of the categories are adult entertainment, any violation connected with alcoholic beverages and all, lot of times these people, then you bring them back to court for the violations, they won't even show up and they just forfeiture the $50, so what this does, this gives them $500.

The concept of increasing a penalty for repeat offenses is clearly punitive and not related to a remedial purpose of covering administrative expenses. In fact, other than simply providing figures for the total revenues and expenditures of the City Court Clerk, there is no evidence of how the fines imposed by the City Judge are to cover the administrative expenses incident to the correction of municipal violations. Fines imposed by the City Ordinance prohibiting reckless driving are intended as punishment and as a deterrent, and not as some remedial measure needed to make the city whole. The public at large, and not the city, is the intended beneficiary of the ordinance, as it is with the state's criminal statutes.

The majority holds Chattanooga City Code § 1-8, facially and as applied, does not violate Article VI, Section 14, of the Tennessee Constitution, thus allowing a city judge to impose a "monetary penalty" of greater than $50 for violation of a municipal ordinance. The majority admits that "were we free to 'write on a clean slate,' we might be inclined to hold that the 'penalty and forfeiture' mentioned in Chattanooga City Ordinance § 1-8 is, in fact, a fine of the type contemplated by Article VI, § 14, of the Tennessee Constitution." The majority, instead, feels constrained by precedent, and in particular, by *O'Dell v. City of Knoxville*, 388 S.W.2d 150 (Tenn. Ct. App. 1964) and *Barrett v. Metropolitan Government of Knoxville and Davidson County*, No. M1999-01130-COA-R3-CV, 2000 WL 798657 (Tenn. Ct. App. June 22, 2000) (application for permission to appeal filed with the Supreme Court). It seems clear that the fine of $300.00 imposed by a City

Court Judge sitting without a jury is in violation of the Tennessee Constitution. Nevertheless, the majority suggests that:

> [T]here is ample precedent that penalties imposed by municipalities for violations of their ordinances – penalties that are often referred to as fines – are actually not "fines" within the meaning of Article VI, § 14.

The majority is not without precedent. However, the majority's reliance on *O'Dell* and *Barrett*, two decisions from this Court, is misplaced, as hereinafter discussed.

The Supreme Court has expressed the preference for substance over form when determining when a person is entitled to the protections afforded to them by the Tennessee and United States Constitutions.

> Ineluctable logic leads to the conclusion that the constitutional protection against double jeopardy, as is the case with the right of counsel and the privilege against self-incrimination, is applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person. . . *Precious constitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings. The test must be the nature and the essence of the proceeding rather than its title.* (Emphasis supplied).

*State v. Jackson*, 503 S.W.2d 185, 186-187 (Tenn. 1973) (quoting *United States v. Dickerson*, 168 F.Supp. 899 (D.C. 1958)); see also *State v. Martin*, 940 S.W.2d 567, 570 (Tenn. 1997) (holding that "our constitution is concerned with substance rather than form").

In this context, it is not determinative whether the $300.00 imposed on the defendant is called a fine, monetary penalty, or anything else. In fact, the City and State use the words interchangeably. Most notably, while T.C.A. § 6-54-306 and Chattanooga City Code § 1-8(a) refer to a "monetary penalty and forfeiture" not to exceed $500.00, the section of the City Code under which the defendant was found guilty, § 24-13, states that a defendant "shall be punished . . . by a fine." Instead of focusing on the choice of words used, the court must look at the purpose of the fine/penalty and whether such purpose was meant to be encompassed by the word "fine" as used in Article VI, Section 14 of the Tennessee Constitution.

The word "fine" is not defined by the Constitution, nor is there any mention of the words "criminal" or "civil" as a qualification for the word "fine." Tennessee Courts have made a few attempts at discerning what is encompassed by the term "fine" as used in the Constitution. In *Poindexter v. State*, 137 Tenn. 386, 193 S.W. 126 (1917), the Court held that a statute requiring a

person abandoning a child to post a bond of greater than $50.00 was not unconstitutional because the penalty imposed by the statute was not a fine in the sense of the constitutional provision. The Court then attempted to articulate the difference between this "penalty" and a "fine":

> While a fine is always a penalty, a penalty is not always a fine. A penalty when recovered ordinarily goes to the statutory beneficiaries while a fine goes to the state.
>
> A fine is proportioned to the gravity of the offense punished, and the financial ability of a defendant to pay is not ordinarily considered. The penalty or bond exacted of a delinquent father under this act is measured by his ability to pay and the flagrancy of his offense is not taken into account.

*Poindexter*, 137 Tenn. 392-393, 193 S.W. at 128 (internal citations omitted)

The Supreme Court has also held that a statute (now repealed) authorizing a judge to fix payments in excess of $50.00 where a husband has failed to support his wife did not violate the Constitution because the payments provided for were not construed as punishment. *Abbott v. State*, 190 Tenn. 702, 231 S.W.2d 355 (1950).

Then, in *O'Dell v. City of Knoxville*, this Court found to be constitutional a city ordinance providing for a penalty of $100.00 for the operation of a vehicle while under the influence of an intoxicant. The Court relied on *Poindexter* in holding that the proceeding for violation of a city ordinance was a civil action and such a penalty was not a fine within the meaning of Article VI, Section 14 of the Tennessee Constitution. *O'Dell* at 388 S.W.2d 150, 152.

While the reasoning of this Court in *O'Dell* is unfavorable to the defendant's position, the result it reached is not incompatible. The ordinance at issue in *O'Dell* "provided for a penalty of not more nor less than $100.00" 388 S.W.2d at 152. The imposition of a statutorily specified fine, allowing no judicial discretion, is one of the recognized exceptions to the rule of jury imposition of fines. *State v. Martin.* Accordingly, the court did not need to reach the issue of whether the proceeding was civil or criminal, and its discussion of the same should properly be considered *obiter dictum.* Moreover, the reasoning in *O'Dell* is inconsistent with several of the cases decided by the Tennessee Supreme Court, including *O'Haver v. Montgomery*, 120 Tenn. 448, 111 S.W. 449 (1908) and *Metropolitan Government of Nashville and Davidson County v. Miles*, 524 S.W.2d 656 (Tenn. 1975).

The Tennessee Supreme Court addressed the issue of municipal ordinance violations in *Miles* when it was faced with the question of whether the double jeopardy clauses of the United States and Tennessee Constitutions applied to proceedings for the violation of a municipal ordinance where the penalty imposed is a fine and not a deprivation of liberty. The Metropolitan Government, relying on *O'Dell* and *O'Haver*, argued that the protection did not apply because the proceeding was a civil action and not a criminal prosecution. The Court held that the proceeding for the violation

of a municipal ordinance was criminal *in substance*, in that it seeks to punish the defendant. *Miles*, 524 S.W.2d at 660.

The Court distinguished between a "fine" and a "civil penalty" as follows:

> [I]n order for an alleged 'civil' action to be considered beyond the protection of the double jeopardy clause it was necessary that such action be 'remedial in nature' and not intended to have the effect of 'inflicting punishment' upon the citizen in order to vindicate public justice. . . .
>
> \* \* \* \* \*
>
> We, therefore, hold that a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that, it seeks punishment to vindicate public justice and, therefore, constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions . . .

524 S.W.2d at 660.

*Miles* is of particular importance as it focuses on the fact that it is a criminal action in substance and purpose, and held that the imposition of a fine/penalty by the city court for the violation of a municipal ordinance constitutes punishment that triggers certain constitutional protections, which in that case was the protection against double jeopardy. The Court had previously extended this protection to juvenile court cases which were considered to be "civil actions" on the grounds that such proceedings subjected the defendant to punishment. *State v. Jackson*, 503 S.W.2d 185 (Tenn. 1973). Additionally, the United States Supreme Court, in *Waller v. Florida*, held that the protection against double jeopardy applies to procedures for the violation of municipal ordinances. 397 U.S. 387, 90 S.Ct. 1184 (1970). To reach its decisions in *Jackson* and *Miles*, the Court recognized the punitive nature of these so-called "civil" actions and this resulted in an outcome inconsistent with that in *O'Dell*.

In the same year that the Court decided *Miles*, it also held that proceedings in city court are primarily civil in nature in deciding who serves as the clerk of the General Sessions Court of Nashville and Davidson County. *Metropolitan Government of Nashville and Davidson County v. Allen*, 529 S.W.2d 699 (Tenn. 1975). It elaborated:

> They are in the nature of an action for debt. They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations. They are governed by rules in civil cases including the right to retrial on appeal to the circuit court where the matter will be heard de novo.

529 S.W.2d at 707 (internal citations omitted).

In *Allen*, the Court modified some of their prior language from *Miles*, stating that the language was "over broad" and that *O'Haver* and *O'Dell* were *not* overruled by *State v. Jackson*. *Allen*, 529 S.W.2d at 706-707. Instead, the Court concluded that there was no conflict between the *Miles-Jackson* holding and that of *O'Haver* and *O'Dell. Id.* It is important to note that while the Court modified some of its language in *Miles*, the critical essence of *Miles* remains, that some actions in the city court are criminal in substance and trigger constitutional protections. Most importantly, *Miles* has not been overruled!

In the most recent case on the issue of municipal violations, the Tennessee Supreme Court held that for the purposes of procedure and appeal, proceedings for the violation of a municipal offence was civil in nature, entitling the defendant to jury trial on appeal to circuit court. *Chattanooga v. Myers*, 787 S.W.2d 921 (Tenn. 1990). The Court reviewed the case law dating back to *Meaher v. Mayor and Aldermen of Chattanooga*, 38 Tenn. 75 (1858), which held that debt is the proper action for the violation of certain municipal ordinances. Without overruling any prior cases, the Court concluded that:

> In summary, for 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil *for the purposes of procedure and appeal*, although the principals of double jeopardy have recently been determined to apply in such cases. The basis of the cases, accepted in Allen-Briggs, is that an appeal to circuit court of a judgment of a municipal court--even when the defendant is the appellant--is an appeal in a civil action brought by the municipality to recover a "debt." (Emphasis added).

*Myers*, 787 S.W.2d at 928 (internal citations omitted).

The Court in *Myers* cited extensively from *O'Haver v. Montgomery*, 120 Tenn. 448, 111 S.W. 449 (1908), a leading case on the question of whether proceedings for the violation of municipal ordinances are civil or criminal. In *O'Haver*, the Court expressly stated that such actions have characteristics of both civil and criminal proceedings, and held that a defendant may be imprisoned by a municipality for nonpayment of a fine. 111 S.W. at 451. While decided in 1908, the language of *O'Haver* best describes the nature of these proceedings as they occur today.

> In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and criminal character. He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine, and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the

-7-

circuit court, where the matter will be heard de novo, the rules of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment. *So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it. . .*

*O'Haver*, 11 S.W. at 451 (emphasis added). *O'Haver* also dispelled the legal fiction of considering actions brought for violation of municipal ordinances as actions for debt.

> The fundamental error in this reasoning, as applied to the present case, is that the facts show no debt. The city did not perform the work at all, and acquired no debt against the defendant . . . The arrest of the defendant was predicated, not upon the fact that he owed the city a debt, but that in refusing to lay the sidewalk he had violated an ordinance, and had thereby become guilty of committing a misdemeanor against the laws of the corporation. . .

*Id.* at 453.

The *Myers* Court attempted to reconcile all the past cases on the issue, including *O'Dell*, and in the process, refused to acknowledge the blatant inconsistencies and Orwellian "doublespeak" that is prevalent throughout the existing case law. First, the Court likens the action to an action for debt, in order to provide for a civil appeal. *Myers*, 787 S.W.2d at 928. Yet both *O'Dell* and *O'Haver* have held that such action is not one for a debt, allowing the municipality to imprison a person for failure to pay the fine/penalty without running afoul of the United States and Tennessee Constitutions that prohibit imprisonment for failure to pay a debt. *O'Dell*, 388 S.W.2d at 152; *O'Haver*, 111 S.W. at 453.

Next, the *Myers* Court concludes that the fine/penalty is "civil for the purposes of procedure and appeal," but recognizes that some "penalties" may be considered punishment for the limited purpose of double jeopardy analysis. *Myers*, at 928.

Additionally, the Court in *Myers* relied on the language in *Allen*, to wit:

> Procedurally, cases involving violation of city ordinances continue to be civil in nature. They are in the nature of an action for debt. They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations. They are governed by rules in civil cases including the right to retrial on appeal to the circuit court where the matter will be heard de novo.

*Myers*, 787 S.W.2d at 922 (quoting *Allen*, 529 S.W.2d at 707). However, the Court took a different view in *Miles*, which was decided just prior to *Allen*.

The Court in O'Haver best summarized the nature of a proceeding for violation of

a municipal ordinance when it said that it is a criminal action in substance and purpose, while being partly criminal and partly civil in the practice of governing it. *O'Haver*, 111 S.W. at 451.

As stated above, the City's and the majority's reliance on *O'Dell* is misplaced. First, as already noted, the ordinance imposed a specific fine and did not leave the judge with any discretion. Second, this language in *O'Dell* regarding the distinction between a fine and a penalty while dicta to that holding, is also contrary to the later case of *Miles*. The majority also relies upon *Barrett v. Metropolitan Government of Nashville and Davidson County*, No. M1999-01130-COA-R3-CV, 2000 WL 798657 (Tenn. Ct. App. June 22, 2000). In that case Frank Barrett violated a City ordinance regarding the repair of a building without a permit, and was fined $500.00 plus costs on each of five civil warrants that had been issued. This Court held that the "fine" or "penalty" resulting from the violation was in the nature of a civil debt that was not covered by Tennessee Constitution, Article VI, Section 14. The Court relied heavily on *Myers* for the idea it was an action for a debt. However, while *Myers* stressed the fact that it considered the action civil for purposes of procedure and appeal, it also recognized the cases of *O'Haver* and *Miles* that held that such actions were criminal in substance.

The *Barrett*[1] Court also pointed out that the appellant could have easily obtained the jury trial he desired "by simply appealing the judgment of the general sessions court and demanding a jury pursuant to Article I, § 6 of the Tennessee Constitution." *Id*. However, I know of no authority that requires a person to go through the time and expense of an appeal in order to receive the benefit of her constitutional rights. Indeed, all judges take an oath to uphold the Constitutions and apply their requirements even-handedly at whatever station the judge operates.

As aptly stated in *Jackson v. State*, the test must be the nature and the essence of the proceeding rather than its title. The constitutional right not to be fined more than $50.00 without a jury must not depend on the venue or title of the proceeding. If the fine cannot be said to serve a solely remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, it is punishment and is subject to the constitutional limitation of Article VI, Section 14. It is beyond comprehension to suggest that a defendant in the municipal setting should not be granted constitutional protections granted to defendants charged with the same or similar crimes under the State laws.

As noted, the United States Supreme Court has extended constitutional protections normally associated with criminal proceedings to those which have been considered civil, i.e.,

---

[1]The Middle Section of this Court recently in *Town of Nolensville v. King*, No. M1999-02512-COA-R3-CV, 2000 WL 1291984 (Tenn. Ct. App. Sept. 14, 2000), again held that a municipal court may impose a "penalty" of greater than $50.00 without a jury. The Court reiterated its reasoning in *Barrett* that the "fine" was in the nature of a civil debt and that the petitioner could obtain a jury on appeal. *Barrett* and *Nolensville* also may be distinguished from the present case in that they were dealing with zoning ordinances that do not mirror State criminal law in the way the driving ordinances do.

*Waller.* That Court, has also in *Austin v. United States*, extended the constitutional protection against excessive fines to certain civil penalties. 509 U.S. 602, 113 S.Ct. 2801 (1993). As the U.S. Supreme Court recognized, "the notion of punishment . . . cuts across the division between the civil and criminal law," 509 U.S. at 610, 113 S.Ct. at 2805, and that for the purposes of the excessive fines clause, "a civil sanction that cannot be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." 509 U.S. at 621, 113 S.Ct. 2812.

The record demonstrates that over 90 city ordinances enacted by the City of Chattanooga are the same as, or substantially similar to, state statutes dealing with motor vehicles and traffic regulation. The Tennessee Code provides that a city may enact ordinances to enforce the rules of the road and that certain types of driving violations may be tried in the General Sessions Court of Hamilton County. T.C.A. § 55-10-107 and 55-10-308. Thus a person conceivably may end up in either a state court or city court for the commission of the same offense. Since 1993, there has been no assistant district attorney or investigator assigned to the City Court of Chattanooga. Instead, the police officers are left with the complete discretion to either cite a person to City Court or to have them arrested and sent to the Hamilton County jail for the same violation based upon the same facts.

This system raises several problems regarding equal protection. While people brought before the City Court may face a lesser penalty, they are also denied significant rights that they would be entitled to in State Court. For example, T.C.A. § 55-10-205 defines reckless driving and makes this offense a Class B misdemeanor, which carries with it a fine of up to $500.00 and imprisonment up to six months. Chattanooga City Code defines reckless driving the same way, and subjects a person to a fine of up to $50.00, and if T.C.A. § 6-54-306 were constitutional, a fine of up to $500.00, but with no imprisonment. As the Trial Judge in this case in his Order points out:

> Prosecutorial discretion in this situation rests not with the District Attorney General, but with police officers and others, who may arrest with or without a warrant depending on the circumstances, and subsequently bring the offender to City Court for an ordinance violation or General Sessions Court for a state law violation.

> Municipal ordinances that duplicate state statutes, that are A, B, or C misdemeanors are penal in nature and require the protection of an accused's constitutional rights.

It is beyond dispute that city ordinances that are identical or substantially similar to state laws are penal in nature, as are any ordinances that seek more than mere remedial relief. Proceedings in city court for the violation of any such ordinances, in my view must carry with it the same constitutional protections as provided in state court for a person convicted of the state offense, including the limitation on the amount a judge may fine the defendant. Accordingly, it is my opinion that City Code Section § 1-8 is unconstitutional as it allows the City Judge to impose a fine in excess of $50.00 without the benefit of a jury, in contravention of Article VI, Section 14 of the Tennessee Constitution.

The majority holds that T.C.A. §§ 6-54-306 and 6-54-308 do not violate equal protection as there is a rational basis for this classification. I agree, but to the extent the City Court is imposing fines of greater than $50.00 in a punitive manner and not solely for remedial purposes, there is an unconstitutional application. The majority finds a rational basis for the delegation of authority to enforce certain driving offenses. I agree there is a rational basis for this delegation. However, as stated, such delegation is unconstitutionally applied when a person charged under a municipal ordinance is denied the protections that would be granted to one charged under the state statute. The arrangement in the City Court is contrary to the stated purposes of the Tennessee Criminal Sentencing Reform Act of 1989, which states:

> (1) Every defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense.
>
> (2) This chapter is to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions.

T.C.A. § 40-35-102.

The majority's second argument, finds that because there is no "policy and practice" of citing all traffic violations to City Court the statute does not impinge upon the authority of the Attorney General. The Tennessee Supreme Court addressed the issue of the extent of the power and discretion held by the district attorney general in *Ramsey v. Town of Oliver Springs*, 998 S.W.2d 207 (Tenn. 1999). The Court held that the practice in that case violated Article VI, § 5 of the Tennessee Constitution by impeding the constitutional and statutory obligations of the District Attorney General for Anderson County to discharge the duties of his office.

> The District Attorney General and only the District Attorney General can make the decision whether to proceed with a prosecution for an offense committed within his or her district. . .
>
> The District Attorney General is answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with the discretion to prosecute, and in the formulation of this decision, he or she is answerable to no one. . .
>
> Were it otherwise, prosecutorial discretion would rest not with the District Attorney General, but with police officers who may arrest with or without a warrant depending on the circumstances. This is, in fact, precisely the harm created by the policy and practice

-11-

employed by the Town of Oliver Springs.

*Ramsey*, 998 S.W.2d at 209-210 (internal citations omitted).

The majority distinguishes *Ramsey* on the grounds that here, there is no "policy and practice" of citing all those who violate state traffic laws within the City's borders to the city court to be tried for violating a city ordinance in those cases where both a state law and city ordinance are implicated. However, any discretion vested with the police officers as to whether a person will be charged with violating a municipal ordinance or a state law infringes on the powers of the District Attorney General and subjects citizens to unequal treatment as explained above. Accordingly, while T.C.A. § 55-10-307 may be facially valid, it has been applied in an unconstitutional manner.

For all of these reasons, I dissent from the majority's holdings, and the state of the law on these issues cries out for the Supreme Court to clear up the confusion resulting from the language in *Allen* and *Myers*.

_____
HERSCHEL PICKENS FRANKS, J.

-12-