The METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY and Earl Hawkins, Criminal Court Clerk for Davidson County, Tennessee, Appellants,

v.

Percy L. ALLEN, Clerk of the Metropolitan Court, et al., Appellees.

Supreme Court of Tennessee.

Nov. 3, 1975.

Larry H. Snedeker, Nashville, for Metropolitan Government.

Seth W. Norman, Nashville, for Hawkins.

Tyree B. Harris, Hooker, Keeble, Dodson & Harris, Nashville, for Rooker.

Charles Patrick Flynn, Nashville, for Allen.

Robert H. Schwartz, Nashville, for Robinson.

OPINION

HENRY, Justice.

This action for a declaratory judgment seeks a determination as to the rights and responsibilities of the respective parties for administering what is known in this record as the "Metropolitan Division" of the Metropolitan General Sessions Court. Actually, the case and controversy as presented to the Chancellor and as briefed and argued on appeal distills itself into a single question, viz.:

Who serves as the Clerk of the General Sessions Court of Metropolitan Nashville and Davidson County?

The Chancellor, in a thorough and instructive opinion, held that the term "Chief Deputy Clerk now serving said Court" as used in § 14.20 of the charter "refers to the defendant Percy L. Allen." He further held that should a vacancy occur in this office or in the clerical personnel handling metropolitan warrants, it would be filled by the appointment of the Presiding Judge of the Metropolitan General Sessions Court. In more direct phraseology he held that the Presiding Judge had the power to appoint the clerk handling metropolitan warrants in the Metropolitan General Sessions Court, subject to the rules and regulations of the Metropolitan Civil Service Commission.

I.

A proper determination of this controversy involves a consideration of the history of the general sessions court of Davidson County and the municipal courts of the old City of Nashville from the time of the creation of the general sessions court in 1937 until this court and the municipal court were merged in 1971.

The General Sessions Court of Davidson County was created by Chapter 12 of the Private Acts of 1937. It was divided into three parts, designated as Part I, Part II and Part III, each clothed with the same jurisdiction. By § 15 of the creating act it was provided that the

Clerk of the *Circuit* Court of Davidson County shall act as Clerk of said Court of General Sessions, and when acting as Clerk of said Court shall be designated "Clerk of Court of General Sessions of Davidson County." (Emphasis supplied)

Two years later, by Chapter 219 of the Private Acts of 1939, the Legislature amended the 1937 act so as to provide

That the Clerk of the *Criminal* Court of Davidson County shall act as clerk of said Court of General Sessions in all criminal cases and when acting in such capacity shall be designated "Clerk of Court of General Sessions of Davidson County, *Criminal Division*." (Emphasis supplied)

As a result of these two enactments, for the next eight years the Davidson County General Sessions Court had two clerks.

We have examined the Nashville City Charter as set forth in Chapter 47 of the Private Acts of 1943. Article 19 relates to courts. By Section 192 a city court was created, with one judge provided. The mayor and city council were authorized to appoint clerks of the Court.[1] Appeals were to the Circuit Court of Davidson County. (See § 198)[2] This same charter provided for a Traffic Court Judge (Sec. 365), to be

---

1. Article 6, Sec. 13 of the Constitution of Tennessee, relating to clerks of courts, has no application to clerks of municipal courts and there is no requirement that these officials be elected by the qualified voters.

2. In 1943 Davidson County had a criminal court and had had one since the passage of Chapter 427 of the Public Acts of 1899.

clerked by the clerk of the Violations Bureau [3] (Sec. 367) with appeals to the Circuit Court of Davidson County (Sec. 370).

The two-clerk era came to an end in 1947 when the Legislature enacted Chapter 859 of the Private Acts of 1947, which provided in pertinent part:

That the Clerk of the *Circuit* Court of Davidson County shall act as Clerk of said Court of General Sessions, and when acting as Clerk of said Court shall be designated "Clerk of Court of General Sessions of Davidson County." Said Clerk is hereby authorized to perform the duties of the *respective parts* of said Court. (Emphasis supplied)

It should be noted that the Nashville Charter of 1947 (Ch. 246, Private Acts of 1947) was approved by the Governor on 20 February 1947, some three weeks before Chapter 859 of the Private Acts of 1947. In this charter, the Clerk of the City Court is appointed by the City Judge, pursuant to Civil Service provision, and appeals from the City Court and Traffic Court are to the Circuit Court. (Articles 46 & 50).

By Chapter 462 of the Private Acts of 1951, the "Night Courts" (Parts IV & V of the General Sessions Court system) were created.

The appropriate charter provisions of the City of Nashville, through the 1951 legislative session, remained substantially the same. See Charter of City of Nashville, 1951.

By Chapter 124 of the Private Acts of 1959, an additional "night judge" was added (designated as Part VI).

In 1959 the Legislature created a comprehensive and statewide system of General Sessions Courts. See Chapter 109, Public Acts of 1959; Section 16–1101 et seq. T.C.A. Section 16–1116 provides, in part:

The clerk of the circuit court of the county shall act as clerk of general sessions, and when acting as clerk of said court

shall be designated as the clerk of the court of general sessions of said county.

Section 1 of the Act, now codified as § 16–1101 T.C.A., excepted certain counties, by population brackets, (Davidson County was not so excepted), and, after so doing recites:

It is the intent of this chapter to hereby create a general sessions court in every county *not expressly excepted from this section.* (Emphasis supplied).

In *Biggs v. Memphis Loan & Thrift Co.,* 215 Tenn. 294, 385 S.W.2d 118 (1964) this Court made it clear that the 1959 act superseded inconsistent private acts. The Court said:

While Courts of General Sessions had been created by private acts in many counties prior to the enactment of Chapter 109, Acts 1959, it was *the purpose of that statute to create a statewide system of Courts of General Sessions* except in the counties expressly excepted from the application of that statute. The purpose of the Legislature is expressed in the caption of the Act as follows:

"AN ACT to create and establish a Court of General Sessions in and for the various counties of Tennessee, and to define and prescribe its powers and jurisdiction and to provide for appeals from said Court" etc., 385 S.W.2d at 121.

From the effective date of this general law forward, the Circuit Court Clerk has been the Clerk of the Sessions Court, pursuant to this the controlling statutory scheme. Section 16–1116 T.C.A. contains an exception, not here applicable, continuing in office any *separate clerk* serving under a private act.

We have not overlooked the provisions of § 16–1124 T.C.A. relating to the effect of Chapter 109, Acts of 1959 on existing gen-

---

**3.** It is stipulated that the defendant Allen is "the person in charge of the Traffic Violations Bureau."

eral sessions courts created by private act, and relating to jurisdiction. We do not feel that this section has any bearing on this controversy. Moreover, as a maximum, this section would continue the authority of the Circuit Court Clerk of Davidson County under the creating act and amendments thereto.

Metro was not in existence at this time and since the enactment of Chapter 859 of the Private Acts of 1947, the Clerk of the Circuit Court of Davidson County had been the Clerk of Court of General Sessions. There was, therefore, complete harmony between the general law and the private act (as amended) creating the Davidson County General Sessions Court system.

In summary, during the twenty-two year period from 1937 to 1959, the Davidson County Circuit Court Clerk was the Clerk of the General Sessions Court, except for an eight-year period during which a two-clerk system was employed. During the same period the City Court and the Traffic Court of the City of Nashville had been served by clerks designated by the respective judges,[4] subject to the rules and regulations of the Civil Service System of the City of Nashville.

Then came Metro.

## II.

Article 11, Section 9 of the Constitution of Tennessee, commonly known as the "home rule" amendment, was adopted by the Limited Constitutional Convention of 1953. It was subsequently approved by referendum, and was proclaimed by the Governor on 19 November 1953.

The last paragraph (amendment No. 8, as submitted to the electorate) provides, in pertinent part:

The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; . . .

Responsive to this new and innovative constitutional provision, the General Assembly, by Chapter 120, Public Acts of 1957, provided procedures for the creation of metropolitan governments. These procedures are codified as § 6–3701 et seq., T.C.A.

Section 6–3719, T.C.A. as originally adopted, provided, in part:

Municipal courts created by the charters of the principal city and smaller cities may be provided for, consolidated or abolished by the charter for metropolitan government as courts thereof; . . . General sessions courts . . . established for the county shall be provided for and continued in the charter for metropolitan government as courts thereof.

Section 6–3704, T.C.A. provided a procedure for the creation of a "Charter Commission." As an alternative it provided that the Commission might be created by private act of the general assembly. This alternative was followed and the general assembly enacted Chapter 408 of the Private Acts of 1961 creating a Charter Commission.

On 28 June 1962 the charter, as proposed by the commission, was approved by the voters of Nashville and Davidson County, in referendum.

Thus the Metropolitan Government of Nashville and Davidson County came into existence, effective, in the main, as of the first Monday in April 1963.

## III.

Article 14 of the Charter relates to Metropolitan Courts.

---

4. There was a four year period from 1943 until 1947 during which the city court clerk was appointed by the mayor and council.

Two wholly separate systems of courts were obviously contemplated, viz. (1) a Metropolitan Court and (2) a General Sessions Court.

The Metropolitan Court consisted of two judges, one (Division I) to hear and determine cases involving breach of ordinance, except traffic violations and the other (Division II) to hear and determine traffic cases. Each was given exclusive jurisdiction in its particular area. (See Sec. 14.01).

Section 14.08, relating to the Clerk, provided in part:

There shall be a Clerk of the Metropolitan Court, appointed by the Judges thereof. . . . The office of Clerk shall be a civil service position . . . There shall be provided by ordinance such deputy clerks and other assistants as may be necessary to the proper functioning of the Metropolitan Court. The positions thus created shall be under civil service.

. . .

Appeals from the Metropolitan Court were to the Circuit Court of Davidson County. (Sec. 14.06).

Section 14.12 relating to General Sessions Courts, provided as follows:

Courts of General Sessions for Davidson County created by Chapter 12 of the Private Acts of 1937 are hereby *recognized* as Courts of the Metropolitan Government of Nashville and Davidson County. Pursuant to Tennessee Code Annotated, Section 6–3719, said Courts are hereby *provided for and continued*, with all rights, duties, powers, obligations, privileges and responsibilities as set forth in said Chapter 12 of the Private Acts of 1937 and all Acts amendatory thereof. In addition to the above enumerated powers, the General Sessions Judges shall have power to issue warrants for the breach of Metropolitan ordinances in furtherance of the authority granted in Section 14.05 of this Article. (Emphasis supplied)

As of April 1, 1963, the effective date of the new Metro-Charter, we reiterate the Metropolitan Court, was wholly separate from the General Sessions Court. The former was served by its own clerk and the latter by the Circuit Court Clerk of Davidson County.

The merger of these two courts was yet to come.

## IV.

In 1969 the general assembly, by Chapter 298 of the Public Acts, declared that, "for all purposes contained within the charter for a metropolitan government, judges of the general sessions court shall likewise be judges of the metropolitan court . . ." (Sec. 6–3719 T.C.A.)

Two years later by Chapter 9, Public Acts of 1971, the legislature amended Sec. 6–3719 by adding the following:

In counties where a general sessions court system exists prior to consolidation, the charter may consolidate municipal and general sessions courts by providing that judges of the municipal court of the principal city may become judges of the general sessions court, and that the general sessions court, in addition to jurisdiction and powers theretofore vested therein, shall also be vested with all the jurisdiction and powers vested in the municipal court of the principal city of the county prior to the creation of metropolitan government, and jurisdiction to hear, try and dispose of all cases arising under the laws, ordinances and resolutions of the metropolitan government.

The stage was now set.

This amendment, effective March 17, 1971, paved the way for a consolidation or merger of the general sessions and metropolitan courts in Nashville and Davidson County.

The Metro Council acted promptly. On 1 June 1971, it adopted Substitute Resolution No. 71–1222, proposing an amendment to the Metropolitan Charter, by abolishing and repealing all of Article 14 (except 14.10

relating to the office of public defender, and 14.11 relating to his compensation). This proposal was ratified by referendum election on 5 August 1971.

It creates a metropolitan general sessions court, divided into nine parts. (Sec. 14.01). Stated broadly it has all the jurisdiction formerly exercised by the Metropolitan Court and all exercised by General Sessions Courts under the laws of Tennessee. A complete merger is accomplished. (Secs. 14.02, 14.03).

The charter provision obviously contemplates that judges of Parts I through VI will be the conventional sessions judges and those of Parts VII, VIII and IX, will serve as successors to the old Metropolitan Court. (See §§ 14.04, 14.05); however, the Metropolitan Court loses its identity and no longer exists as such. From this point forward Metropolitan Nashville and Davidson County have only one court, a court of general sessions, sitting in nine divisions.

The office of Presiding Judge is created and his duties, powers, and responsibilities are defined. (See Sec. 14.09A). Separate dockets are to be kept for civil, criminal and traffic cases. (Sec. 14.09B). Appeals are to the Circuit Court of Davidson County where violations of ordinances are involved. (Sec. 14.26).

This action arises by virtue of a dispute as to the meaning of Sec. 14.20, which reads as follows:

> One clerk's office shall serve the metropolitan general sessions court, and the necessary clerks for the operation of the same shall be furnished by the criminal court clerk, Davidson County, Tennessee, for the operation of the criminal court part of the metropolitan general sessions court, and the said criminal court clerk shall designate one deputy clerk as chief deputy; and all necessary deputy clerks for handling the civil cases of the metropolitan general sessions court will be furnished by the circuit court clerk, Davidson County, Tennessee, who shall name one as chief deputy clerk; and the clerks now serving the three divisions of the metropolitan court are hereby transferred to the clerk's office to handle the metropolitan warrants and procedures for the metropolitan general sessions court, and the chief deputy clerk, now serving said court, shall continue as chief deputy clerk, when all are transferred at their salaries now being paid. The salary of all personnel selected and serving the metropolitan general sessions court, as hereinabove provided shall be established by the clerk appointing them, subject to the approval of the presiding judge, except those clerks involved in handling the municipal warrants, whose salary shall be approved by the presiding judge in accordance with the metropolitan pay schedule plan for the metropolitan government, Nashville, Davidson County, Tennessee. The deputy clerks shall be required to give bond upon the assignment of their duties of office, which shall be in the manner and amounts set by general law.

Essentially the dispute arises from the language of the first sentence. We use the phrase "first sentence" loosely, and only to indicate that portion of this section which precedes the first period. We are dealing with a "sentence" containing one hundred and fifty-one words. Actually it is a series of sentences—at least six in number—constituting a hodgepodge, disdainful of all known rules of grammar and defying definitive treatment.

As we read and construe § 14.20, it was the intention of the Metro Council to create a three-clerk system, with all operating out of a single clerical office. First there would be a "deputy clerk" handling the "criminal court part", to be appointed by the Criminal Court Clerk. Secondly there would be a "chief deputy clerk" handling the "civil cases", appointed by the Circuit Court Clerk. Finally, there would be a "chief deputy clerk" to handle "metropolitan warrants and procedures".

## V.

We are urged by Metro to hold that it was the intention of the council to create a new clerk's office to handle municipal cases in the "Metropolitan Division" of the Metropolitan General Sessions Court, with the clerk to be appointed pursuant to Civil Service Rules.

Notwithstanding the use of the designation "Metropolitan Division" in the complaint, in the briefs and elsewhere in the record, this is merely an unfounded designation and apparently a hold-over from the days when Nashville had a Metropolitan Court. Divisions VII, VIII and IX, of the Metropolitan General Sessions Court, are the successors of the old Metropolitan Courts. But they continue to be General Sessions Courts clothed with all the jurisdiction, power and authority given such courts under laws of the State of Tennessee, and identical in all jurisdictional respects to the remaining divisions of the court.

Article 6, Section 13 of the Constitution of Tennessee provides, in part, as follows:

> Judges of the Supreme Court shall appoint their clerks who shall hold their offices for six years. Chancellors shall appoint their clerks and masters who shall hold their offices for six years. *Clerks of the Inferior Courts holden in the respective Counties* or Districts, shall be elected by the qualified voters thereof for the term of four years. (Emphasis supplied).

■ We hold that the Metropolitan General Sessions Court of Nashville and Davidson County, Tennessee, in its entirety, is one of the "the Inferior Courts holden in the respective Counties", within the contemplation of Article 6, Section 13 of the Constitution of the State of Tennessee. Its clerk must be an elected official.

■ We, therefore, hold that so much of this charter provision as apparently contemplates the appointment of a clerk (designated as chief deputy clerk) to handle metro-politan warrants and procedures, is unconstitutional and void.

This brings us back to the initial question, "who serves as the clerk of the General Sessions Court of Nashville and Davidson County?"

Our answer:

■ The clerk of the Criminal Court of Davidson County handles the "criminal court part" and the Circuit Court Clerk of Davidson County handles the "civil cases". This charter provision operates to restore the two-clerk system.

■ But this does not fully answer the question. There remains for consideration a determination of the nature of the cases represented by "metropolitan warrants and procedures".

We hold that these are civil.

In *Metropolitan Gov't of Nashville & Davidson County v. Miles,* 524 S.W.2d 656 (Tenn.1975), this Court dealt with the violation of a city ordinance in the *context of double jeopardy,* as prohibited by Article 1, Section 10 of the Constitution of Tennessee and the Fifth Amendment to the Constitution of the United States. In that context we held that "a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that it seeks punishment to vindicate public justice and, therefore, *constitutes jeopardy under the double jeopardy clauses* of the Tennessee and Federal Constitutions, and, consequently, the alleged offender, whether acquitted or convicted, *cannot again be tried for the same offense* in a state trial court of general jurisdiction over the timely objection of the defendant". (Emphasis supplied).

Some of the language we used in *Miles* may have been overbroad—particularly our treatment of *O'Haver v. Montgomery,* 120 Tenn. 448, 111 S.W. 449 (1908) and *O'Dell v. City of Knoxville,* 214 Tenn. 237, 379 S.W.2d 756 (1963) in which we said:

(T)hose cases have been, at least impliedly overruled by the decision of this Court in *State v. Jackson,* 503 S.W.2d 185 (Tenn.1973).

More precise language—and language more in keeping with the thrust of our principal holding in *Miles,* which we reiterate—would have been:

These cases are not authority for the proposition that an appeal may follow an acquittal, after a trial on the merits in a case involving violation of a city ordinance.

This is what we actually held. We cited *State v. Jackson, supra,* which was bottomed upon *United States of America v. Dickerson,* 168 F.Supp. 899 (D.C.1958), which was a double jeopardy case holding that the constitutional protection against double jeopardy is applicable to all proceedings "whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person", and that "the test must be the nature and the essence of the proceeding rather than its title."

When examined in the light of the foregoing, there is no conflict between the *Miles-Jackson* holding and that of *O'Haver* and *O'Dell.*

Procedurally, cases involving violation of city ordinances continue to be civil in nature. *Bristol v. Burrow,* 73 Tenn. 128 (1880) and *Deitch v. Chattanooga,* 195 Tenn. 245, 258 S.W.2d 776 (1953).

They are in the nature of an action for debt. *Memphis v. Smythe,* 104 Tenn. 702, 58 S.W. 215 (1900). They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations. *Guidi v. Memphis,* 196 Tenn. 13, 263 S.W.2d 532 (1953). They are governed by rules in civil cases including the right to retrial on appeal to the circuit court where the matter will be heard de novo. *O'Dell v. City of Knoxville, supra.*

■■ An appeal for the violation of a municipal ordinance is a civil action, triable *de novo* in the circuit court in precisely the same manner and under the same procedural rules as those governing tort actions instituted in the General Sessions Courts, to include the right to a jury trial. But, as held in *Miles,* the rules of double jeopardy apply to preclude an appeal from a judgment of acquittal. This seemingly incongruous result is mandated by the holding of the Supreme Court of the United States in *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), and is supported by other cases cited in *Miles.*

VI.

We, therefore hold:

■ 1. That the Criminal Court Clerk of Davidson County serves, *ex officio,* as clerk of so much of the docket of Metropolitan General Sessions Court as arises from cases originated in that court by state warrants. He has no duty or responsibility in connection with any case originated by metropolitan warrants.

■ 2. That the Circuit Court Clerk of Davidson County serves, *ex officio,* as clerk of so much of the docket of the Metropolitan General Sessions Courts as arises from cases originated in that court by civil process, and of all cases involving metropolitan warrants and procedures, normally originating in Parts VII, VIII, and IX.

■ 3. That defendant, Percy L. Allen, who is stipulated to be "the person in charge of the Traffic Violations Bureau" has no *ex officio* connection with the General Sessions Court.

■ 4. That the Presiding Judge of the General Sessions Court has no appointive powers in relation to the Clerk of the Court or his assistants, and none may be given to him under the Constitution and laws of the State of Tennessee.

We view this as an undesirable result, realizing as we do, the manifest advantage, from a standpoint of effective judicial administration, of having a single clerk, and

clerical personnel, appointed by and answerable to the Court. This desirable objective must, however, await the action of a future constitutional convention.

The decree of the Chancellor is reversed. The costs of this appeal are taxed against Metropolitan Nashville and Davidson County.

FONES, C. J., and BROCK and COOPER, JJ., concurring.

HARBISON, J., not participating.