# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2000 Session

## CITY OF CHATTANOOGA v. KEVIN DAVIS

**Appeal from the Criminal Court for Hamilton County**
**No. 225103     Douglas A. Meyer, Judge**

### FILED OCTOBER 31,  2000

### No. E2000-00664-COA-R3-CV

---

The defendant was found guilty of violating a city ordinance proscribing reckless driving.  A Chattanooga city court judge imposed a "penalty" of $300.  On his appeal to the Hamilton County Criminal Court, the defendant was again found guilty, but this time his punishment was set at $50.  The trial court went further and permanently enjoined the City of Chattanooga from "imposing or trying to collect" fines or penalties in excess of $50 for ordinance violations.  The trial court also declared the state statutes and city ordinance providing for the assessment of penalties up to $500 for such violations to be unconstitutional and/or invalid.  We affirm the trial court's imposition of a $50 fine.  We reverse the judgment of court declaring the statutes and city ordinance unconstitutional and/or invalid. We further reverse the judgment of the court enjoining the City from collecting fines or penalties in excess of $50.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
### Affirmed in Part; Reversed in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., joined by way of a separate concurring opinion.  HERSCHEL P. FRANKS, J., filed a dissenting opinion.

Kenneth O. Fritz, Chattanooga, Tennessee, for the appellant, City of Chattanooga.

Jerry H. Summers, Chattanooga, Tennessee, for the appellee, Kevin Davis.

Paul G. Summers, Attorney General & Reporter, and Peter M. Coughlan, Assistant Attorney General, for the intervening party, State of Tennessee.

## OPINION

I.

The City appeals from the trial court's order finding three statutory provisions and a city ordinance unconstitutional and/or invalid. The text of the statutes and city ordinance at issue provide, in pertinent part, as follows:

*T.C.A. § 6-54-306*

All home rule municipalities are empowered to set maximum penalties of thirty (30) days imprisonment and/or monetary penalties and forfeitures up to five hundred dollars ($500), or both, to cover administrative expenses incident to correction of municipal violations.

*T.C.A. § 6-54-308*

(a) Except as provided in § 6-54-306 for home rule municipalities, the legislative body of any other municipality may establish a monetary penalty not to exceed five hundred dollars ($500) for each violation of an ordinance of such municipality.

(b) The authority for increased monetary penalties for ordinance violations provided by this section does not apply to ordinances regulating all moving traffic violations.

*T.C.A. § 55-10-307*

(a) Any incorporated municipality may by ordinance adopt, by reference, any of the appropriate provisions of §§ 55-8-101 -- 55-8-180, 55-10-101 -- 55-10-310,[1] 55-50-301, 55-50-302, 55-50-304, 55-50-305, 55-50-311, and 55-50-312, and may by ordinance provide additional regulations for the operation of vehicles within the municipality, which shall not be in conflict with the provisions of such sections....

*Chattanooga City Ordinance § 1-8*

(a) Wherever in this Code or in any ordinance or rule of regulation promulgated by any officer of the city under authority vested in him by law or ordinance, any act is prohibited or is declared to be

---

[1]Among the provisions that municipalities are authorized to adopt pursuant to this section is T.C.A. § 55-10-205, the state reckless driving statute.

-2-

unlawful or a misdemeanor, or the doing of any act is required, or the failure to do any act is declared to be unlawful, the violation of any such provision of this Code or any such ordinance, rule or regulation shall be punished by a monetary penalty and forfeiture not exceeding five hundred dollars ($500.00).

The defendant, Kevin Davis, was cited for reckless driving in violation of a city ordinance.[2] Davis appeared in Chattanooga City Court, where he pled guilty to the charge and was fined $300. Davis appealed to the Hamilton County Criminal Court[3] (hereinafter referred to as "the trial court") and filed a motion to dismiss, arguing, *inter alia*, that the imposition of a fine in excess of $50 violates Article VI, § 14 of the Tennessee Constitution, which provides, in pertinent part, that "[n]o fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers...." In addition to challenging the constitutionality of the fine itself, Davis argued below and contends on this appeal that T.C.A. § 6-54-306, which enables home rule municipalities such as Chattanooga to impose penalties up to $500 for violations of municipal ordinances, is unconstitutional in that it "deprives an individual of due process of law and fundamental fairness."

Following a hearing on June 21, 1999, the trial court entered an order purporting to "amend" the lower court's judgment and reducing the fine to $50. On July 14, 1999, the trial court entered another order, enjoining the City from imposing or collecting fines or penalties in excess of fifty dollars. The injunction was later modified to allow the City to accept payment of fines imposed before the date of the injunction. The City moved to stay the injunction, which motion was denied. The City then filed an application for an extraordinary appeal with this Court seeking to stay the injunction; we denied the City's application.

Davis filed a motion in the trial court seeking a clarification of that court's decrees, arguing that although the trial court had "overruled the defendant's constitutional attack on T.C.A. § 6-54-306," the court had "expressed its personal belief [at the June 21, 1999, hearing] that said statute was

_____

[2]Chattanooga City Code § 24-13 provides as follows:

> (a) Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving.
>
> (b) Every person convicted of reckless driving shall be punished upon the first conviction by a fine of not less than five dollars ($5.00), on a second conviction by a fine of not less than ten dollars ($10.00), on a third conviction by a fine of not less than twenty-five dollars ($25.00) and on all subsequent convictions by a fine of not less than fifty dollars ($50.00).

It should be noted that this provision, while setting *minimum* fines for violations, does not set maximums.

[3]Section 4.1 of the Chattanooga City Charter states that an appeal from the city court "may be taken to the circuit [criminal] court of Hamilton County." (Brackets in original).

unconstitutional." Davis requested another hearing so the trial court could "clarify its present position" as to the constitutionality of the statute.

The trial court entered an order directing the Tennessee Attorney General to file a brief. Following a hearing in which the Attorney General participated, the trial court entered an order in which it made several findings. First, the trial court reiterated its holding that Davis should be fined $50 for violation of the city ordinance against reckless driving. Second, the trial court declared that the $300 fine imposed by the city judge violates Article VI, § 14 of the Tennessee Constitution. Third, the trial court held that T.C.A. §§ 6-54-306 and 6-54-308 are "unconstitutional in their application." The court stated as follows:

> There is no reasonable basis or criteria by which [home rule municipalities] can be considered as a class different from other municipalities or non-incorporated areas of the State. The classification is purely arbitrary and therefore unconstitutional under the equal protection clause[s] of the United States and Tennessee Constitutions.

Fourth, the trial court declared T.C.A. § 55-10-307 to be "unconstitutional in its applications," reasoning that "[b]y delegating to municipalities the authority to adopt by ordinances state statues [sic] without requiring them to impose the same penal provisions, the legislature is denying citizens equal treatment under the law." The court stated that this legislative grant of authority was also unconstitutional because "[p]rosecutorial discretion in this situation rests not with the District Attorney General, but with police officers and others, who may arrest with or without a warrant...and subsequently bring the offender to City Court for an ordinance violation or General Sessions Court for a state law violation." Fifth, the trial court declared City Code § 1-8 "invalid as enacted because it does not (1) set maximum penalties of thirty days, (2) does not state that it is to cover administrative provisions incident to correction of municipal violations, and (3) states that violations of ordinances *shall be punished* by a monetary penalty." (Emphasis in original). The trial court reasoned that if the purpose of the ordinance is to punish violators of municipal ordinances, then the penalty imposed is a criminal penalty and cannot be considered a civil penalty. Finally, the trial court made permanent the July 14, 1999, injunction enjoining the City from imposing or collecting fines or monetary penalties in excess of fifty dollars.

The City appeals, presenting four issues, which we restate as follows:

> 1. Did the trial court err in holding that the fine imposed by the city judge violates Article VI, § 14 of the Tennessee Constitution?
>
> 2. Did the trial court err in finding T.C.A. §§ 6-54-306, 6-54-308, and 55-10-307 unconstitutional?

3. Did the trial court err in finding Chattanooga City Code § 1-8 invalid?

4. Did the trial court lack jurisdiction to issue an injunction precluding the City Court from imposing civil penalties in excess of fifty dollars?

The Attorney General joins this appeal to defend the constitutionality of the challenged statutes.

II.

We begin our analysis with a threshold review of the role of the trial court in an appeal from the Chattanooga City Court. An appeal from a municipal court is subject to the same terms and restrictions as an appeal from general sessions court. T.C.A. § 27-5-102 (1980). An appeal from general sessions court is heard *de novo* in the circuit court. T.C.A. § 27-5-108(c) (1980). As the Supreme Court has stated:

> *De novo* appeals from the general sessions courts differ from other types of appellate proceedings. The circuit court does not review the general sessions court's decision. Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court.

**Ware v. Meharry Med. College,** 898 S.W.2d 181, 184 (Tenn. 1995) (citation omitted).

In conducting a *de novo* hearing, the trial court was not charged with the responsibility of reviewing the propriety of the fine imposed by the city court; rather, it was to adjudicate the charge of reckless driving as if the hearing in the city court had never happened. In so doing, the trial court was presented with two issues: (1) whether the defendant was guilty of violating the ordinance and, (2) if so, what the appropriate penalty should be. It does not appear from the record that Davis' guilt was at issue on the appeal to the trial court. Accordingly, the issue before the trial court was the amount of the penalty. The trial court assessed a $50 fine. Because this amount does not run afoul of Article VI, § 14, the issue of the constitutionality of a fine in excess of $50 is not squarely presented by the trial court's resolution of the reckless driving charge against Davis.

While it was not required to determine the correctness of the city court's judgment, the trial court elected to do so. This arguably calls into play the principle that a court should not reach a constitutional questions unless it is absolutely necessary. *See* **Owens v. State,** 908 S.W.2d 923, 926 (Tenn. 1995). However, in this case, the trial court's assessment of a $50 fine stems from its determination that any fine above that amount would be unconstitutional. The trial court issued an injunction against the City because of this finding. We therefore find it necessary to resolve whether a fine in excess of $50 imposed for a violation of a municipal ordinance violates Article VI, § 14.

As we have previously stated, Article VI, § 14 provides as follows:

> No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

At first blush, it would seem unnecessary to proceed any further: Davis was, at least initially, *fined* $300, and the Constitution prohibits the imposition of a *fine* of more than $50. However, our inquiry does not end there, because, as noted below, there is ample precedent that penalties imposed by municipalities for violations of their ordinances -- penalties that are often referred to as fines -- are actually not "fines" within the meaning of Article VI, § 14.

In *City of Chattanooga v. Myers,* 787 S.W.2d 921, 926 (Tenn. 1990), the Supreme Court noted that it had long been held in Tennessee that an action to recover a fine or penalty for a violation of a municipal ordinance is a civil proceeding. The Court traced this rule back to its decision in *Meaher v. Mayor and Aldermen of Chattanooga,* 1 Head 74, 38 Tenn. 74 (1858), in which the Court stated:

> If the fine, forfeiture, or penalty -- for the name is not so material -- is fixed by the ordinance, for any particular thing, that may be recovered by warrant, and the only proof required is, that the offence, or act to which such fine or forfeiture is attached, has been committed. *Debt is the proper action for penalties prescribed for certain offences, by acts or ordinances.*

*Myers,* 787 S.W.2d at 923 (citing *Meaher,* 38 Tenn. at 76). (Emphasis in *Myers*). In *O'Haver v. Montgomery,* 120 Tenn. 448, 111 S.W. 449 (1908), the Supreme Court recognized that a proceeding to recover a penalty for a violation of a municipal ordinance has characteristics of a civil as well as a criminal action:

> In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and criminal character. He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine, and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard de novo, the rules

of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment. So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it. When we characterize the action as being of a criminal nature, we do not mean to be understood as using the term wholly in the sense in which it is applicable to actions brought by the state in the form of indictments and presentments for violations of the criminal laws of the state, but rather by analogy, and for want of a better term. A municipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies -- that is, through its own courts and officers. However, the right of appeal may be given, and generally is given, and, if exercised, the municipality appears in another jurisdiction; that is, in the courts of the state, as a suitor to recover the penalty which it has assessed against the violator of its laws. But the larger court, while trying the controversy as a civil suit, will see to it that the municipality, if successful, shall have there the same sanctions for the enforcement of its laws as if the trial had terminated in the municipal court. In truth, the action is in its various aspects a hybrid one, partly criminal and partly civil.

*O'Haver,* 111 S.W. at 451-452.

In 1964, the Court of Appeals addressed the exact issue presented in the instant case. In *O'Dell v. City of Knoxville,* 388 S.W.2d 150 (Tenn. Ct. App. 1964), the defendant, who was fined $100 by a city judge for a violation of a municipal ordinance, argued that both the fine and the ordinance authorizing it violated Article VI, § 14. This Court expressly rejected the defendant's argument, relying upon the long-standing rule in Tennessee that a proceeding for a violation of a municipal ordinance is a civil action, not a criminal proceeding. *Id.* at 152.

Six years after the *O'Dell* decision, the United States Supreme Court held in *Waller v. Florida,* 397 U.S. 387, 395, 90 S.Ct. 1184, 1188-89, 25 L.Ed.2d 435 (1970), that, under double jeopardy principles, a defendant who was tried in a municipal court for violating a municipal ordinance could not later be tried by the state for state offenses based upon the same facts. In *Metropolitan Government of Nashville and Davidson County v. Miles,* 524 S.W.2d 656, 658-59, 660 (Tenn. 1975), the Tennessee Supreme Court, applying *Waller,* concluded that a proceeding for the imposition of a fine in a municipal court constituted jeopardy under the double jeopardy provisions of the Tennessee and United States Constitutions. The plaintiff, citing *O'Haver* and *O'Dell*, had argued that double jeopardy did not occur if the proceeding was simply for the imposition of a fine in a civil proceeding. The *Miles* Court rejected this argument, opining that *O'Haver* and *O'Dell* had been, "at least impliedly, overruled" by *State v. Jackson*, 503 S.W.2d 185

(Tenn. 1973). *Miles,* 524 S.W.2d at 659. In *Jackson*, the Supreme Court held that a juvenile found not guilty in a juvenile proceeding, which is considered a civil proceeding, could not be tried again for the same offense upon appeal to the circuit court. *Jackson,* 503 S.W.2d at 188.

In *Metropolitan Government of Nashville and Davidson County v. Allen,* 529 S.W.2d 699 (Tenn. 1975), the Supreme Court was presented with the issue of who should be the clerk of the general sessions court of Davidson County. The resolution of that issue required a determination of whether proceedings for violations of municipal ordinances are civil or criminal in nature. The Supreme Court concluded that such proceedings are civil. *Id.* at 706. In reviewing the applicable case law, the Court revisited *Miles* and noted that its language "may have been overbroad" when it was stated that *O'Haver* and *O'Dell* had been impliedly overruled:

> More precise language -- and language more in keeping with the thrust of our principal holding in *Miles*, which we reiterate -- would have been:
>
> > These cases [*O'Haver* and *O'Dell*] are not authority for the proposition that an appeal may follow an acquittal, after a trial on the merits in a case involving violation of a city ordinance.
>
> \* \* \*
>
> When examined in the light of the foregoing, there is no conflict between the *Miles-Jackson* holding and that of *O'Haver* and *O'Dell*.
>
> Procedurally, cases involving violation of city ordinances continue to be civil in nature.
>
> They are in the nature of an action for debt. They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations. They are governed by rules in civil cases including the right to retrial on appeal to the circuit court where the matter will be heard *de novo*.
>
> An appeal for the violation of a municipal ordinance is a civil action, triable *de novo* in the circuit court in precisely the same manner and under the same procedural rules as those governing tort actions instituted in the General Sessions Courts, to include the right to a jury trial. But, as held in *Miles*, the rules of double jeopardy apply to preclude an appeal from a judgment of acquittal. This seemingly incongruous result is mandated by the holding of the Supreme Court

of the United States in ***Waller v. Florida***...and is supported by other cases cited in ***Miles***.

***Allen,*** 529 S.W.2d at 707 (citations omitted).

As we noted at the beginning of this particular part of our analysis, the Supreme Court, in ***City of Chattanooga v. Myers,*** 787 S.W.2d 921, 928 (Tenn. 1990), reaffirmed the principle that proceedings for violations of municipal ordinances are civil in nature. In ***Myers,*** the Supreme Court held that a defendant convicted of a violation of a municipal ordinance is entitled to a jury trial on appeal to the circuit court. ***Id.*** at 928. The Court stated as follows:

> In summary, for 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil for the purposes of procedure and appeal, although the principles of double jeopardy have recently been determined to apply in such cases. The basis of the cases, accepted in ***Allen-Briggs***,[4] is that an appeal to circuit court of a judgment of a municipal court -- even when the defendant is the appellant -- is an appeal in a civil action brought by the municipality to recover a "debt."

***Id.*** at 928 (citation omitted).

In the course of analyzing the numerous cases on the issue, the ***Myers*** Court noted that this Court's holding in ***O'Dell*** -- that a fine for the violation of a city ordinance is not a "fine" within the meaning of Article VI, § 14 -- is "a holding compatible with the ***Allen-Briggs*** position." ***Id.***

Finally, we note the recent decision of a panel of the Middle Section of the Court of Appeals in ***Barrett v. Metropolitan Government of Nashville and Davidson County,*** C/A No. M1999-01130-COA-R3-CV, 2000 WL 798657, at *2 (Tenn. Ct. App. M.S., filed June 22, 2000) (perm. app. filed August 22, 2000), wherein this Court, speaking through Judge Cantrell, held that "when the dust settled after the ***Myers*** decision, ***O'Dell*** was still the leading case on whether a jury had to impose a fine/penalty of more than $50 for the violation of a municipal ordinance." In addressing violations of a city ordinance, we specifically held in ***Barrett*** that

> the courts have adhered to the ***Meaher*** holding that the name given the punishment in the ordinance--whether fine, forfeiture, or penalty-- is not material; it is still in the nature of a civil debt, recoverable in a civil action. Therefore, the imposition of the $500 penalties by the

---

[4]"***Allen-Briggs***" is a reference to ***Metropolitan Government of Nashville and Davidson County v. Allen,*** 529 S.W.2d 699 (Tenn. 1975) and ***Briggs v. City of Union City,*** 531 S.W.2d 106 (Tenn. 1975). The latter case relied solely upon ***Allen*** to hold that a defendant convicted of a violation of a city ordinance is entitled to a jury trial upon appeal to the circuit court. ***Briggs,*** 531 S.W.2d at 107.

general sessions court did not violate Article 6, § 14 of the Tennessee Constitution.

*Id*. at *2 (citations omitted).

Accordingly, pursuant to ***O'Dell, Barrett, and Myers***, we conclude that the $300 fine imposed by the city judge in this case does not violate Article VI, § 14 of the Tennessee Constitution. However, we will not disturb the trial court's judgment imposing a $50 fine upon the defendant, as that amount is within the penalty range provided by Ordinance § 1-8.

Were we free to "write on a clean slate," we might well be inclined to hold that the "penalty and forfeiture" mentioned in Chattanooga City Ordinance § 1-8 is, in fact, a fine of the type contemplated by Article VI., § 14, of the Tennessee Constitution. Such a holding would necessarily lead to a further holding that the legislation before us, both city and state, is unconstitutional as applied in this case, *i.e.*, the imposition of a "penalty and forfeiture" in excess of $50 by a judge at a bench trial. However, we do not believe that we are at liberty to make such findings and holdings because the "slate" is not clean. There are two decisions of this Court, ***O'Dell*** and ***Barrett,*** expressly holding to the contrary. The Supreme Court's decision in ***Myers*** appears to approve the basic holding of ***O'Dell*** that a "fine" for the violation of a city ordinance is not a fine of the type contemplated by Article VI, § 14. We believe that we are bound by precedent to reject the Article VI, § 14, argument of the defendant, which argument was accepted by the trial court as a part of the rationale for its judgment. If an appellate judicial determination is to be made upholding the trial court's judgment on this point, we believe it is the prerogative of the Supreme Court to make it.

In summary, we find and hold that Chattanooga City Ordinance § 1-8, facially and as applied, does not violate Article VI, Section 14, of the Tennessee Constitution.

III.

We now turn to the issue of the constitutionality of T.C.A. §§ 6-54-306 and 6-54-308, which, respectively, enable home rule municipalities and non-home rule municipalities to impose penalties up to $500 for violations of municipal ordinances. In holding both provisions unconstitutional, the trial court declared that "no reasonable basis" exists to distinguish home rule municipalities "from other municipalities or non-incorporated areas of the State," and that such a classification is "purely arbitrary and therefore unconstitutional under the equal protection clause."

Article XI, § 8 of the Tennessee Constitution provides, in pertinent part, as follows:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as

may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Acknowledging the similarity between Article XI, § 8 and the Equal Protection Clause of the United States Constitution, Tennessee courts have long applied an equal protection analysis to constitutional challenges brought pursuant to Article XI, § 8. *See Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, 180 (Tenn. 1912); *King-Bradwall Partnership v. Johnson Controls, Inc.,* 865 S.W.2d 18, 21 (Tenn. Ct. App. 1993). Absent an infringement of a fundamental right, or a classification involving a "suspect" or "protected" class -- neither of which is present here -- the standard to be applied in analyzing equal protection claims is the familiar "rational basis" standard. *State v. Tester,* 879 S.W.2d 823, 828 (Tenn. 1994); *King-Bradwall,* 865 S.W.2d at 21.

We do not find that these statutes violate equal protection. T.C.A. § 6-54-306 empowers home rule municipalities to enact penalties up to $500 for ordinance infractions; T.C.A. § 6-54-308 empowers *all other municipalities* to do the same. Pursuant to these provisions, all municipalities-- home rule or otherwise -- are empowered with the authority to impose increased penalties for violations of municipal ordinances. Thus, the trial court's conclusion that home rule municipalities are classified differently and in an arbitrary manner from other municipalities such as to violate equal protection is erroneous.

As for the distinction made between municipalities and "non-incorporated areas of the State," we find that the Legislature had a rational basis for this classification. An incorporated municipality, with clearly defined boundaries and police power responsibilities within those boundaries, certainly has a unique interest in addressing prohibited conduct that occurs within its geographic borders. By the enactment of T.C.A. §§ 6-54-306 and 6-54-308, the Legislature has provided such municipalities with a mechanism by which to enforce its own ordinances, to deter infractions by the imposition of penalties and/or imprisonment, and to recoup the administrative costs incurred in the process. We find that these reasons provide a rational basis for this classification. We find no violation of equal protection in the classification.

IV.

The trial court's rationale for declaring T.C.A. § 55-10-307 unconstitutional was two-fold. First, the trial court reasoned that the provision denies citizens "equal treatment under the law" in that it "delegat[es] to municipalities the authority to adopt by ordinances state statues [sic] without requiring them to impose the same penal provisions." Second, the trial court declared that the statute "impinges upon the authority of the District Attorney General," who alone "can make the decision whether to proceed with a prosecution for an offense committed within his or her district." We will address each of these rationales in turn.

Regarding the trial court's holding that T.C.A. § 55-10-307 denies equal protection, we find that a rational basis exists for the delegation of authority to enforce certain driving offenses.[5] Certainly, a municipality has a special interest in the operation of motor vehicles on the streets within its borders. We therefore do not agree with the trial court that this delegation of authority denies "equal treatment" in violation of the Constitution. Again, we find the classification to have a rational basis. Furthermore, we find no basis for holding that the general authorization in T.C.A. § 55-10-307 runs afoul of equal protection simply because it fails to require a municipality to impose the exact penalties set forth in the corresponding state statutes. A municipality's obvious interest in the use of its streets is a sufficient rational basis for authorizing it to impose different penalties.

In holding that T.C.A. § 55-10-307 unconstitutionally impinges upon the authority of the District Attorney General, the trial court relied upon the Supreme Court's recent decision in *Ramsey v. Town of Oliver Springs,* 998 S.W.2d 207 (Tenn. 1999). In *Ramsey*, the District Attorney General of Anderson County filed suit against the Town of Oliver Springs, alleging that the town's policy and practice of prosecuting Anderson County criminal cases in a city court located in Roane County was illegal.[6] *Id.* at 207-08. The city court was granted jurisdiction over such cases by a private act. *Id.* The Supreme Court noted that the District Attorney General has "extremely broad" discretion in seeking warrants, presentments, informations, or indictments for offenses committed within his or her district. *Id.* at 209. The Court went on to state:

> Were it otherwise, prosecutorial discretion would rest not with the District Attorney General, but with police officers who may arrest with or without a warrant depending on the circumstances. This is, in fact, precisely the harm created by the policy and practice employed by the Town of Oliver Springs.

*Id.* at 210. While finding the private act "facially valid," the Supreme Court concluded that the act -- by permitting the Town's police chief to take defendants who allegedly committed crimes in Anderson County before a city court in Roane County -- "impeded the constitutional and statutory obligation of the District Attorney General for Anderson County to discharge the duties of his office." *Id.*

Relying upon *Ramsey*, the trial court in the instant case found T.C.A. § 55-10-307 to be unconstitutional. The trial court did not question the facial validity of the statute; rather, it found that "in its applications" the statute impinged upon the authority of the District Attorney General. We find that the trial court's reliance upon *Ramsey* is misplaced. In *Ramsey*, the private act was held to be unconstitutional as applied because the Town of Oliver Springs had both a "policy and practice" of prosecuting *all Anderson County criminal* cases arising within the town in the city court

---

[5]T.C.A. § 55-10-307(b) enumerates several offenses -- driving while intoxicated, failing to stop after a traffic accident, driving on a revoked or suspended license, and drag racing -- that remain solely state offenses.

[6]The Town of Oliver Springs is located in three counties, one of which is Anderson County; the city judge of the Town sits in the Roane County part of Oliver Springs.

-12-

located in Roane County. In the instant case, however, there is insufficient evidence in the record to establish a "policy and practice" on the part of the City or its officers of citing *all* those who violate state traffic laws within the City's borders to the city court to be tried for violating a city ordinance, in those cases where there is both a state law and city ordinance implicated by the defendant's conduct. Two police officers testified that they knew of no policy or directive to cite traffic offenders only for municipal violations instead of state offenses. Further, the record does not contain evidence of a practice of the City's officers of citing only for municipal violations. As such, we cannot say that the City has a "policy and practice" of citing traffic offenders only to city court that rises to the level of impinging upon the discretion and authority of the District Attorney General.

## V.

The trial court held that Chattanooga City Code § 1-8 is invalid because it does not "comply" with the provisions of T.C.A. § 6-54-306. Specifically, the court found that the ordinance (1) does not set a maximum penalty of thirty days; (2) does not state that it is to cover administrative expenses incident to correction of municipal violations, and (3) provides that violations of ordinances shall be *punished* by a penalty.

T.C.A. § 6-54-306 provides that "home rule municipalities are empowered to set maximum penalties of thirty (30) days imprisonment *and/or* monetary penalties and forfeitures up to five hundred dollars ($500), *or both*, to cover administrative expenses incident to correction of municipal violations." (Emphasis added). Clearly, the statute does not require a municipality to set a maximum penalty of 30 days imprisonment; nor does the statute require that the ordinance adopting this provision include a statement that the purpose of the ordinance is to "cover administrative expenses." These bases for the trial court's holding are without merit. Further, we do not find that the ordinance is invalid merely because of the use of the term "punished." As we have already held, the penalty imposed by this ordinance is a *civil* penalty; it is not criminal in nature. The fact that the City chose to use the language "punished by a monetary penalty" does not alter the civil nature of the penalty imposed. *See **Barrett*** at * 2. We therefore find that § 1-8 is valid.

## VI.

We conclude that the trial court erred in finding the various state statutes and Chattanooga City Ordinance § 1-8 unconstitutional and/or invalid. It results that the injunction should not have been issued[7] and, accordingly, the issuance of same is hereby reversed and held for naught. The judgment of the trial court assessing a $50 fine against the defendant is affirmed. This case is

---

[7]We further note that the injunction was improper for several other reasons. The injunction was not requested by either party in this case, nor was the City provided any prior notice of the injunction request. The record does not contain any "verified complaint, affidavit or other evidence" to demonstrate "immediate and irreparable injury, loss or damage" to a party, *see* Tenn. R. Civ. P. 65.04(2); in fact, the injunction is apparently aimed at preventing injury to "numerous individuals" who are unidentified. Moreover, we note that this was a *de novo* hearing on the charge of reckless driving. *See* T.C.A. §§ 27-5-102, 27-5-108(c) (1980). An injunction prohibiting the City from collecting fines or penalties from other "numerous individuals" is simply beyond the scope of the matter before the court.

-13-

remanded to the trial court for the entry of an order consistent with this opinion. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE