IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2021 Session

## METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY v. KALLIE KAY DREHER

**Appeal from the Circuit Court for Davidson County**
**No. 19C815   Kelvin D. Jones, Judge**

_____

**No. M2020-00635-COA-R3-CV**

_____

This case began in the environmental court division of the general sessions court for Davidson County.  The Metropolitan Government of Nashville and Davidson County ("Metro") alleged that the defendant had violated a section of the Metro Code by operating a short term rental property with the wrong type of permit.  The matter was originally heard by a referee, who found that the defendant violated the Metro Code as alleged, fined the defendant fifty dollars, and declared that the property was ineligible for a short term rental permit for three years.  The defendant timely requested a rehearing before the general sessions court judge.  Upon rehearing, the judge ruled in favor of the defendant and dismissed the case.  Metro then sought a de novo appeal before the circuit court.  The circuit court concluded that the appeal must be dismissed because the general sessions court had dismissed the charge after a trial on the merits, and therefore, a trial de novo would violate principles of double jeopardy.  Metro appeals.  We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Quantavius M. Poole and Paul Jefferson Campbell, II, Assistant Metropolitan Attorneys, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville & Davidson County.

Seth Nelson Cline and Grover Christopher Collins, Nashville, Tennessee, for the appellee, Kallie Kay Dreher.

Braden H. Boucek, Nashville, Tennessee, for the Amicus Curiae, Beacon Center of Tennessee.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

On January 9, 2019, the Metro Codes Department of the Metropolitan Government of Nashville and Davidson County filed a civil warrant against Kallie Kay Dreher in the environmental court division of the general sessions court. The civil warrant alleged that on July 13, 2018, Ms. Dreher had violated Metro Code section 17.16.070.U.1.a by operating a short term rental property ("STRP") at 1810 Fatherland Street in Nashville without having a "Non-Owner Occupied" permit. The civil warrant simply stated, "Metro seeks an Order to remedy violations." It also stated that failure to appear in court on the date listed in the "citation/warrant" could result in the court ordering Ms. Dreher to pay a fine, court costs, and taxes.

Initially, a hearing was held before a referee. Although we do not have a transcript of the hearing, the referee entered an order finding that Ms. Dreher violated the code as alleged. Section 17.16.070 provided, in pertinent part:

> vi. The penalty for operating a short term rental property without a permit shall be:
>
> (1) A fifty dollar fine as imposed by a court of competent jurisdiction. Each day of operation without a permit shall constitute a separate offense.
> . . . .
> (3) Upon a finding of a court of competent jurisdiction that a short term rental property has operated without a permit, in addition to any other relief granted, there shall be a waiting period of three years from the date of such finding for the property to become eligible for a STRP permit.[1]

As such, the referee entered an order fining Ms. Dreher fifty dollars and providing that the

---

[1] On appeal, the parties cite various other sections of the Metro Code. However, only this section was made part of the record on appeal. Therefore, we have confined our review to the section of the code in the record. *See Williams v. Epperson*, 607 S.W.3d 289, 297 (Tenn. Ct. App. 2020) ("At the outset, we note that no copy of the Municipal Code is included in the record and that we must therefore confine our application of the Municipal Code to § 13-305 as it appears in the record. *See* Tenn. R. Evid. 202(b) (providing that optional judicial notice of law may be taken of municipal ordinances only upon a party's request and reasonable notice to adverse parties)[.]"); *411 P'ship v. Knox Cty.*, 372 S.W.3d 582, 587-88 (Tenn. Ct. App. 2011) (declining to take judicial notice of zoning ordinances cited in the parties' briefs but not included in the appellate record).

property was ineligible for a short term rental property permit for three years.

After the referee's decision, Ms. Dreher filed a timely request for a rehearing before the general sessions court judge. The hearing before the judge was held on March 19, 2019. Metro took the position that Ms. Dreher had operated her rental property with the wrong type of permit for short term rentals. According to Metro, the permit that she had obtained was for owner-occupied rentals, but based on Metro's subsequent investigation, it alleged that Ms. Dreher was not permanently residing at her rental property. Metro claimed that Ms. Dreher needed a "non-owner-occupied" permit. At the conclusion of the proof, the judge announced her oral ruling that "the city has just not proven that she does not live there." Thus, the judge ruled in favor of Ms. Dreher.

Thereafter, Metro sought a de novo appeal to circuit court. Before the circuit court, Metro filed a motion to amend, seeking to substitute a formal complaint for the civil warrant. Ms. Dreher filed a response, arguing that any review by the circuit court would have to be limited due to the fact that the case against her was dismissed on the merits by the general sessions court, triggering double jeopardy protections and preventing a de novo appeal. After several months of litigation regarding the issue, the circuit court eventually entered an order dismissing the appeal. The circuit court concluded that the issue was controlled by the Tennessee Supreme Court's decision in *Metropolitan Government of Nashville and Davidson County v. Miles*, 524 S.W.2d 656, 660 (Tenn. 1975), wherein the court held that "a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance . . . constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions" and that Metro could not "appeal and have another trial De novo in the Circuit Court for the same offense."

Metro timely filed a notice of appeal to this Court.

## II.    ISSUES PRESENTED

Metro presents the following issues, as we perceive them, for review on appeal:

1. Whether the circuit court erred by failing to provide a de novo appeal from the order of the general sessions court;
2. Whether the circuit court erred in applying double jeopardy protections on the basis that the general sessions proceeding was quasi-criminal when Metro's action was "civil and remedial"; and
3. Whether Ms. Dreher timely objected to de novo review in the circuit court.

Ms. Dreher responds to each of the issues raised by Metro but does not present any additional issues for review. An amicus curiae brief was filed on appeal by the Beacon Center of Tennessee, which urges this Court to affirm the circuit court's decision.

- 3 -

## III. STANDARD OF REVIEW

"The issue of whether the double jeopardy clauses of the United States Constitution or the Tennessee Constitution apply in this case is a question of law." *City of Church Hill v. Reynolds*, No. E2000-01376-COA-R3-CV, 2001 WL 242583, at *3 (Tenn. Ct. App. Mar. 12, 2001). Appellate courts review questions of law de novo with no presumption of correctness as to the trial court's ruling. *Parveen v. ACG S. Ins. Agency, LLC*, 613 S.W.3d 113, 117 (Tenn. 2020).

## IV. DISCUSSION

We begin with an examination of *Metropolitan Government of Nashville and Davidson County v. Miles*, 524 S.W.2d 656 (Tenn. 1975), which was found by the circuit court to be controlling on the issue before us. In *Miles*, the defendant was charged with interfering with a police officer in violation of a particular section of the Metro Code. *Id.* at 657. The penalty for the violation was a fine of fifty dollars. *Id.* After a trial on the merits in general sessions court, the case was dismissed. *Id.* Metro then sought a de novo appeal in circuit court. *Id.* The defendant moved to dismiss on the grounds that a de novo appeal would violate the double jeopardy clauses of the United States and Tennessee Constitutions.[2] *Id.* The circuit court agreed and dismissed the appeal. *Id.* On appeal to the supreme court, Metro maintained that it had "the right to appeal De novo to the Circuit Court a judgment of the General Sessions Court dismissing on the merits a charge of violation of a city ordinance, the punishment for which is the imposition of a fine[.]" *Id.* at 657-58.

Metro argued that the proceeding against the defendant was a civil one as distinguished from a criminal action. *Id.* at 659. The Tennessee Supreme Court had recently explained that the constitutional protection against double jeopardy "'[i]s applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of *liberty* of the person.'" *Id.* (quoting *State v. Jackson*, 503 S.W.2d 185, 186 (Tenn. 1973)) (emphasis added). The court had reasoned that "'[p]recious constitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings.'" *Id.* (quoting *Jackson*, 503 S.W.2d at 186). In that case, the court determined that the appropriate "'test'" was "'the nature and the essence of the proceeding rather than its title,'" and "'[i]f the result may be a loss of personal liberty, the constitutional safeguards apply.'" *Id.* (quoting *Jackson*, 503 S.W.2d at 186-87). Thus, the remaining question in *Miles* was "whether or not the double jeopardy clause protects one from a second trial in which, if found guilty, a 'fine,' rather than imprisonment, may be imposed." *Id.*

---

[2] "Both the state and federal constitutions provide that no person shall, for the same offense, 'be twice put in jeopardy of life or limb.'" *State v. Conley*, 639 S.W.2d 435, 436 (Tenn. 1982) (quoting U.S. Const. amend. V; Tenn. Const. art. I, § 10).

Quoting the United States Supreme Court, the *Miles* court explained that "'[w]here the objective of the subsequent action likewise is Punishment, the acquittal is a bar, because to entertain the second proceeding [f]or punishment would subject the defendant to double jeopardy.'" *Id.* (quoting *Helvering v. Mitchell*, 58 S.Ct. 630, 632 (1938)). The *Miles* court expressly held that "the imposition of a Fine is punishment." *Id.* at 660. It went on to explain that "in order for an alleged 'civil' action to be considered beyond the protection of the double jeopardy clause it was necessary that such action be 'remedial in nature' and not intended to have the effect of inflicting 'punishment' upon the citizen in order to vindicate public justice." *Id.* (quoting *Helvering*, 58 S.Ct. at 633). The court expressly adopted the following language from a Georgia case: "'A matter is criminal only if imprisonment or the assessment of a fine may follow conviction . . . only actions intended to authorize criminal punishment as distinguished from remedial actions subject the defendant to jeopardy.'" *Id.* (quoting *Cushway v. State Bar*, 120 Ga.App. 371, 170 S.E.2d 732, 735-36 (1969)).

Finally, the court addressed Metro's argument that the nature of a de novo appeal in circuit court prevented the application of the double jeopardy clause on the theory that the general sessions court judgment was "wiped clean." *Id.* The court was "not impressed with this argument." *Id.* It explained that "[t]he double jeopardy clause protects not only from a second punishment for the same offense, it also forbids a second trial for the same offense." *Id.*

In summary, the *Miles* court announced its holding as follows:

> We, therefore, hold that a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that, it seeks punishment to vindicate public justice and, therefore, constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions, and, consequently, the alleged offender, whether acquitted or convicted, cannot again be tried for the same offense in a state trial court of general jurisdiction over the timely objection of the defendant. Thus, T.C.A., Section 27-509, and Metropolitan Charter, Section 14.26, cannot be construed to authorize the appeal sought herein because, if so construed, they would be unconstitutional.
>
> In conclusion, we affirm the action of the trial court in holding that neither the Metropolitan Government Charter, Section 14.26, nor T.C.A., Section 27-509, authorizes the Metropolitan Government to appeal and have another trial De novo in the Circuit Court for the same offense and, concur in the action of the trial court in dismissing said appeal.

*Id.*

Later that same year, the Tennessee Supreme Court revisited some of the language in *Miles* and attempted to clarify its holding regarding the criminal or civil nature of proceedings involving the violation of city ordinances. In *Metropolitan Government of Nashville and Davidson County v. Allen*, 529 S.W.2d 699, 706 (Tenn. 1975), the court emphasized that *Miles* "dealt with the violation of a city ordinance *in the Context of double jeopardy*." (emphasis added). The Court explained,

> *In that context* we held that 'a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil *in substance*, in that it seeks punishment to vindicate public justice and, therefore, Constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions, and, consequently, the alleged offender, whether acquitted or convicted, Cannot again be tried for the same offense in a state trial court of general jurisdiction over the timely objection of the defendant.'

*Id.* (quoting *Miles*, 524 S.W.2d at 660) (emphasis added). The court acknowledged that some of the language used in *Miles* "may have been overbroad," particularly with respect to whether certain cases recognizing civil aspects of such proceedings had been impliedly overruled. *Id.* at 706-707. The court added,

> More precise language—and language more in keeping with the thrust of our principal holding in *Miles*, which we reiterate—would have been:
>
> > These cases are not authority for the proposition that an appeal may follow an acquittal, after a trial on the merits in a case involving violation of a city ordinance.
>
> This is what we actually held.

*Id.* at 707. "*Procedurally*," the court explained, "cases involving violation of city ordinances continue to be civil in nature." *Id.* (emphasis added). Thus, *Allen* clarified,

> An appeal for the violation of a municipal ordinance is a civil action, triable De novo in the circuit court in precisely the same manner and under the same procedural rules as those governing tort actions instituted in the General Sessions Courts, to include the right to a jury trial. *But, as held in Miles, the rules of double jeopardy apply to preclude an appeal from a judgment of acquittal.*

*Id.* (emphasis added).

In 1990, the Tennessee Supreme Court thoroughly examined the caselaw on the subject and further confirmed the holding in *Miles*, stating,

> In summary, for 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil *for the purposes of procedure and appeal*, although the principles of double jeopardy have recently been determined to apply in such cases. *See Miles, supra*; *cf. United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (discussing under what circumstances a civil penalty constitutes "punishment" for the purposes of double jeopardy analysis).

*City of Chattanooga v. Myers*, 787 S.W.2d 921, 928 (Tenn. 1990) (emphasis added).

More recently, the Tennessee Supreme Court discussed *Miles* in a different context in *City of Chattanooga v. Davis*, 54 S.W.3d 248 (Tenn. 2001). *Davis* was a case involving the Fifty-Dollar Fines Clause, not double jeopardy. *Id.* at 252. Because the Fifty-Dollar Fines Clause makes "a substantive distinction between punitive and non-punitive assessments" and does not apply "when the assessment is not punitive in nature," a question had arisen as to whether the Fifty-Dollar Fines Clause applied to monetary sanctions imposed for the violation of a municipal ordinance. *Id.* at 259. The Supreme Court acknowledged that "even a brief review of the case law reveals, much ink has been spilled, in literally scores of cases, to delineate the precise nature and object of municipal court proceedings." *Id.* The court noted,

> Since our decision in *City of Chattanooga v. Myers*, 787 S.W.2d 921 (Tenn.1990), the law now appears settled that proceedings for a municipal ordinance violation are civil in nature, at least in terms of technical application of procedure and for pursuing avenues of appeal. Outside technical procedure and appeal, however, substantial conflict may still be found as to the characterization of the substantive nature of the proceeding. Indeed, depending upon the precise issue before the particular court, proceedings for a municipal ordinance violation have been described as "civil in character," *City of Memphis v. Smythe*, 104 Tenn. 702, 703, 58 S.W. 215, 215 (1900); as "partak[ing] more or less of a civil wrong," *Hill v. State ex rel. Phillips*, 216 Tenn. 503, 507, 392 S.W.2d 950, 952 (1965); as "partly criminal," *O'Haver v. Montgomery*, 120 Tenn. 448, 460, 111 S.W. 449, 452 (1908); and as "criminal rather than civil in substance," *Metropolitan Gov't v. Miles*, 524 S.W.2d 656, 660 (Tenn. 1975).

*Id.* at 259-60. The court explained that "civil proceedings may impose sanctions that are 'so punitive in form and effect' as to trigger constitutional protections." *Id.* at 261 (citing *Stuart v. State Dept. of Safety*, 963 S.W.2d 28, 33 (Tenn. 1998)). Elaborating on *Miles*, the court added,

Indeed, in the specific context of a 'civil' proceeding for a municipal ordinance violation, this Court has held that the imposition of a pecuniary sanction triggers the protections of the double jeopardy clause to prevent a second 'punishment' in the state courts for the same offense. *See Miles*, 524 S.W.2d at 660 ("We hold that the imposition of a *fine* is punishment." (emphasis in original)).

*Id.* In a footnote, the court recognized that there was "some confusion as to the import of *Miles*" after *Allen* had described its language as overbroad. *Id.* at 261 n.14. However, the court reiterated that *Miles* "continues to represent an accurate statement of the law." *Id.*

Against this backdrop, we consider the arguments raised by Metro on appeal as to why *Miles* should not control the outcome of this case. Metro argues that its action against Ms. Dreher was "purely civil and remedial," and therefore, double jeopardy protections do not apply. Metro contends that *Miles* was limited to proceedings "for the imposition of a fine" and that "*Miles* was never intended to apply to civil actions that are remedial in nature." According to Metro, it never intended for its action against Ms. Dreher to have the effect of inflicting punishment. Therefore, Metro argues, double jeopardy protections are inapplicable.

Metro's claim about the nature of this proceeding is simply not supported by the record. It is true, as Metro asserts, that its original civil warrant simply stated, "Metro seeks an Order to remedy violations." However, it also stated that failure to appear could result in the court ordering her to pay a fine. The civil warrant alleged that Ms. Dreher had violated a particular section of the Metro Code by operating a short term rental property without the proper permit. In turn, the code provided, in pertinent part:

vi. The *penalty* for operating a short term rental property without a permit shall be:
(1) A fifty dollar fine as imposed by a court of competent jurisdiction. Each day of operation without a permit shall constitute a separate offense.[3]
. . . .

(emphasis added). Not surprisingly, then, the referee who initially found that Ms. Dreher violated the code imposed a fine of fifty dollars. On rehearing, the general sessions court judge found no violation of the code, so there was no fine imposed.

---

[3] According to Ms. Dreher, a separate section of the Metro Code specifies that violations of the title on zoning are misdemeanor offenses. For the reasons stated above, we cannot consider the code sections that do not appear in the record. However, we note that a statute cited by Metro on appeal, addressing municipal zoning, provides the same. *See* Tenn. Code Ann. § 13-7-208(a)(1) ("The chief legislative body may provide for the enforcement of any ordinance enacted under this part and part 3 of this chapter. A violation of any such ordinance is a Class C misdemeanor.").

Focusing on the vague request in the civil warrant for "an Order to remedy violations," Metro claims that it "did not seek to fine or otherwise punish Defendant." Metro maintains that it never intended for Ms. Dreher to be fined for past conduct and that it really only wanted to obtain an injunction in order to stop her "ongoing" violation of the Metro Code. However, this assertion is not borne out by the record. Metro's civil warrant, filed on January 9, 2019, did not allege any ongoing violation. It alleged that Ms. Dreher had violated the Metro Code on one specific date several months earlier, on July 13, 2018. At the hearing before the general sessions court judge, Metro's witness was asked if Ms. Dreher was "[a]t this time" in violation of a particular code section, and he responded, "No. She doesn't have a listing today." Metro's witness was also asked, "are you seeking to revoke or deny her permit?" He responded, "No."

According to Metro, the transcript from the general sessions court proceeding reveals that it never expressly *asked* for a fine during that hearing, but we note that Metro never *disclaimed* any intention to seek a fine either. As Metro's counsel acknowledged before the circuit court, "at best, the record would be silent on that issue." In addition, when asked why the referee had imposed a fine if none was requested, Metro's counsel conceded that a fine may have been specifically requested by Metro during the hearing before the referee, for which we have no transcript. Notably, when Metro filed a motion to amend its complaint in circuit court, it *did* expressly seek the imposition of fines. In fact, Metro's proposed complaint sought "a fine of $50.00 per day of advertisement" and "an additional fine of $50.00 per day of operation." At the hearing on the motion to amend, Metro insisted that its proposed complaint was "not changing" the civil warrant but "just being more specific" and "making it more clear what relief we're seeking at this time."

Metro claims that it has a number of options for proceeding against those who violate the zoning code, citing Tennessee Code Annotated section 13-7-208(a). This statute, regarding municipal zoning, provides:

> (a)(1) The chief legislative body may provide for the enforcement of any ordinance enacted under this part and part 3 of this chapter. A violation of any such ordinance is a Class C misdemeanor.
> (2) In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained, or any building, structure or land is or is proposed to be used in violation of any ordinance enacted under this part and part 3 of this chapter, the building commissioner, municipal counsel or other appropriate authority of the municipality, or any adjacent or neighboring property owner who would be specially damaged by such violation, *may, in addition to other remedies, institute injunction*, mandamus or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use, or to correct or abate such violation, or to prevent the

occupancy of the building, structure or land.

Tenn. Code Ann. § 13-7-208(a) (emphasis added). The Tennessee Supreme Court has recognized that this section "explicitly provides Metro with the authority to seek judicial redress in the event any structure 'is proposed to be used in violation of any' of Metro's zoning ordinances." *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 762 (Tenn. 2015) (citing Tenn. Code Ann. § 13-7-208(a)(2)). This Court has also recognized that this statute "specifically authorize[s] local governments to seek injunctive relief to secure compliance with local zoning requirements." *Bramblett v. Coffee Cty. Planning Comm'n*, No. M2005-01517-COA-R3-CV, 2007 WL 187894, at *5 (Tenn. Ct. App. Jan. 24, 2007). However, this statute was never mentioned when Metro submitted a proposed amended complaint in an attempt to clarify its claims in the trial court. Instead, the amended complaint characterized the action as one "to fine and enjoin" Ms. Dreher. The proposed amended complaint specifically stated that it was an action to enforce Metro's ordinances pursuant to Tennessee Code Annotated section 7-3-501, which states,

> When any person violates an ordinance, law or regulation of a metropolitan government, any police or peace officer of such metropolitan government or any employee of the metropolitan government authorized to enforce such ordinance, law or regulation, in whose presence the violation is committed or who determines after investigation that there is probable cause such a violation has been committed, may issue a citation or civil warrant, giving a copy to the violator, showing the ordinance, law or regulation violated and the date, time and place when the violator is to appear in court.

Thus, Metro's argument regarding its options under section 13-7-208 does not change the fact that *this* proceeding was for the imposition of a fine.

In summary, "Metro asks this Court to adopt a test by which purely civil zoning actions and other remedial measures can be reviewed." However, this argument is misplaced. This was not a purely remedial action that was not intended to inflict punishment, as Metro now claims. All along, at each stage, it was a proceeding for the imposition of a penalty in the form of a fine. Thus, we conclude that this case is squarely controlled by the decision in *Miles*.[4]

This Court reached a similar result, when applying *Miles*, in *City of Church Hill v. Reynolds*, 2001 WL 242583. In that case, the defendant was issued a misdemeanor citation alleging violations of city ordinances over a one-month period. *Id.* at *1. The city court found him guilty of violating the ordinances on specific dates and fined him accordingly.

---

[4] We express no opinion regarding Metro's argument that it is entitled to elect whether or not to pursue a fine, in spite of the mandatory language in the Metro Code. It is not necessary to resolve that issue because, factually, that is not what occurred in this case.

- 10 -

*Id.* at *1-2. The defendant sought a de novo appeal to the circuit court, which likewise found the defendant guilty of several violations. *Id.* at *3. However, the circuit court found him guilty on additional days for which the defendant had been tried by the city court with no finding of guilt. *Id.* The defendant appealed to this Court, claiming that "he was subject to double jeopardy when the Circuit Court Judge found him guilty of violations on days for which he was found not guilty by the City Court Judge." *Id.* On appeal, we explained that "[t]here are three fundamental principles that underlie the double jeopardy provisions of both Constitutions: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after a conviction; and (3) protection against multiple punishments for the same offense." *Id.* We recognized "the long and troubled history of cases discussing the unique body of law with regard to municipal ordinances." *Id.* at *4. Specifically:

> Courts have wrestled with how to deal with municipal ordinances because they are not easily classified as civil or criminal, as demonstrated by the fact that they have been referred to as civil, criminal, and even quasi-criminal over the years. According to the Court in *Myers*, the "clear" rule to be gleaned from a review of the various cases is that, as far as general procedural matters and matters of appeal are concerned, cases involving violations of municipal ordinances are civil in nature. Even though these cases are considered "civil" from a procedural standpoint, *the prohibition against double jeopardy nevertheless applies.*

*Id.* (emphasis added). We described *Miles* as "the leading Tennessee case on the applicability of the double jeopardy prohibition to violations of municipal violations." *Id.* Applying *Miles* and *Myers*, we ultimately concluded that "the prohibitions against double jeopardy apply to proceedings involving Defendant's alleged violation of these municipal ordinances." *Id.* at *5. Holding that the defendant "cannot be placed in jeopardy twice for the same offense," we reversed the circuit court's finding of guilt for the additional dates. *Id.* at *6. The defendant "could not be retried in Circuit Court for violations of ordinances on certain days for which he was tried and not found guilty in City Court." *Id.*

In conclusion, because Metro was also a party to the *Miles* case, we reiterate the language used by the Tennessee Supreme Court at that time and apply it to this proceeding against Ms. Dreher. "'[O]nly actions intended to authorize criminal punishment as distinguished from remedial actions subject the defendant to jeopardy.'" *Miles*, 524 S.W.2d at 660 (quoting *Cushway*, 170 S.E.2d at 735-36). In this context, a matter is criminal "'if imprisonment or the assessment of a fine may follow conviction.'" *Id.*[5] "[I]n order for an alleged 'civil' action to be considered beyond the protection of the double

---

[5] *See State v. Conley*, 639 S.W.2d 435, 435-37 (Tenn. 1982) (applying these quotes from *Miles* to determine that the revocation of driving privileges of one declared to be an habitual offender is "remedial in nature" within the meaning of double jeopardy).

jeopardy clause it was necessary that such action be 'remedial in nature' and not intended to have the effect of inflicting 'punishment' upon the citizen in order to vindicate public justice.'" *Id.* The initial proceeding filed by Metro in general sessions court "for the imposition of a fine upon a person for allegedly violating a city ordinance [was] criminal rather than civil in substance, in that, it [sought] punishment to vindicate public justice and, therefore, constitute[d] jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions." *Id.* As a result, Ms. Dreher "cannot again be tried for the same offense in a state trial court of general jurisdiction over the timely objection of the defendant."[6] *Id.* Metro cannot "have another trial De novo in the Circuit Court for the same offense and, [we] concur in the action of the trial court in dismissing said appeal." *Id.*

## V.     CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellant, Metropolitan Government of Nashville and Davidson County, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[6] Because *Miles* used the term "timely objection," Metro suggests on appeal that Ms. Dreher did not make a "timely" objection to the circuit court proceeding and that she waived her double jeopardy rights by filing a motion regarding the timeliness of the appeal to circuit court and waiting four months after the appeal was filed to raise the issue of double jeopardy. The circuit court denied Ms. Dreher's motion to dismiss the appeal as untimely on July 17, 2019, Metro filed a motion to amend its complaint on July 30, and Ms. Dreher filed a response raising the issue of double jeopardy on August 20.

In its four-sentence argument with respect to this issue, Metro does not cite any case law interpreting the "timely objection" language from *Miles* or otherwise discussing the waiver of double jeopardy rights, and it does not cite to any location in the record to indicate that it ever challenged the timeliness of Ms. Dreher's double jeopardy objection in the trial court. As such, we deem this issue waived. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010); *see also Lunsford v. K-VA-T Food Stores, Inc.*, No. E2019-01272-COA-R3-CV, 2020 WL 1527002, at *6 (Tenn. Ct. App. Mar. 31, 2020) (quoting *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").